100 P.3d 952

**HAWAII MANAGEMENT ALLIANCE
ASSOCIATION, Appellant–
Appellant,**

v.

**The INSURANCE COMMISSIONER and
the Division of Insurance of the Depart-
ment of Commerce and Consumer Af-
fairs, State of Hawai'i; and Kevin Bal-
dado, Appellees–Appellees.**

No. 24801.

Supreme Court of Hawai'i.

Nov. 18, 2004.

Ellen Godbey Carson, Dianne Winter Brookins, and Isaac H. Moriwake (Alston Hunt Floyd & Ing), Honolulu, on the briefs, for appellant-appellant, Hawai'i Management Alliance Association.

Adina L.K. Cunningham, and Dorothy Sellers, Deputy Attorneys General, on the briefs, for appellee-appellee, The Insurance Commissioner and the Division of Insurance of the Department of Commerce and Consumer Affairs, State of Hawai'i.

Andrew S. Winer, and Thomas E. Bush (Winer Meheula Devens & Bush), Honolulu, on the briefs, for appellee-appellee Kevin Baldado.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by DUFFY, J.

Appellant-appellant Hawaii Management Alliance Association (HMAA) appeals from the February 4, 2002 judgment of the first circuit court, the Honorable Eden Elizabeth Hifo presiding, in which the circuit court affirmed the March 1, 2001 and March 22, 2001 orders of the Insurance Commissioner of the Insurance Division, Department of Commerce and Consumer Affairs (Commissioner). The Commissioner had ordered an award of attorneys' fees and costs totaling

$12,462.99 to be paid by HMAA to the attorneys representing appellee-appellee Kevin Baldado (Baldado); the circuit court concluded that the Commissioner did not err in awarding attorneys' fees and costs to Baldado, and HMAA appealed to this court.

HMAA contends that the Commissioner and the circuit court erred in awarding Baldado attorneys' fees and costs because the Employee Retirement Income Security Act of 1974 (ERISA) preempts Hawai'i Revised Statutes (HRS) § 432E–6, Hawaii's external review statute of the Patient's Bill of Rights and Responsibilities Act (HRS chapter 432E). HMAA also argues that the Commissioner and circuit court erred by failing to award HMAA attorneys' fees because Baldado's claim for coverage was an action in assumpsit and HMAA was the prevailing party.

We agree with HMAA's contention that ERISA preempts Hawaii's external review statute. Consequently, the circuit court's conclusions that Baldado was entitled to attorneys' fees and costs and that HMAA was not entitled to attorneys' fees and costs are void. We therefore vacate the Commissioner's March 1, 2001 order, the Commissioner's March 22, 2001 order, and the circuit court's February 4, 2002 judgment.

## I. BACKGROUND

In September 2000, Baldado was diagnosed with metastatic renal carcinoma. Baldado's treating physician, William Loui, M.D., requested authorization from HMAA to perform a nonmyeloablative stem cell transplant to treat Baldado's cancer. HMAA denied Dr. Loui's request, stating that, "[a]ccording to National guidelines, stem cell transplant[s][are] not covered for solid tumors...." HMAA informed Baldado of his appeal rights and stated that if Baldado or Dr. Loui appealed, HMAA's Utilization Management Department would review the denial. Baldado exercised his appeal rights and submitted additional information regarding stem cell transplants. In a letter dated January 23, 2001, HMAA upheld its denial, explaining that it denied the request because (1) Baldado's plan did not cover "investigational/experimental procedure[s]"; (2) the service was not a covered benefit under federal government health plans; and (3) the service was not medically necessary. In a subsequent letter, HMAA informed Baldado that its medical director had recommended that HMAA deny Baldado's request. The letter also stated that with the medical director's denial, Baldado had exhausted all of HMAA's internal complaint and appeal procedures, but that HRS § 432E–6 (Supp. 2000)[1] provided for an external review of

1. HRS § 432E–6, entitled "External review procedure," provides in pertinent part:

(a) After exhausting all internal complaint and appeal procedures available, an enrollee, or the enrollee's treating provider or appointed representative, may file a request for external review of a managed care plan's final internal determination to a three-member review panel appointed by the commissioner composed of a representative from a managed care plan not involved in the complaint, a provider licensed to practice and practicing medicine in Hawaii not involved in the complaint, and the commissioner or the commissioner's designee in the following manner:

  (1) The enrollee shall submit a request for external review to the commissioner within sixty days from the date of the final internal determination by the managed care plan;

  (2) The commissioner may retain:

    (A) Without regard to chapters 76 and 77, an independent medical expert trained in the field of medicine most appropriately related to the matter under review. Presentation of evidence for this purpose

shall be exempt from section 91–9(g); and

    (B) The services of an independent review organization from an approved list maintained by the commissioner;

  (3) Within seven days after receipt of the request for external review, a managed care plan or its designee utilization review organization shall provide to the commissioner or the assigned independent review organization:

    (A) Any documents or information used in making the final internal determination including the enrollee's medical records;

    (B) Any documentation or written information submitted to the managed care plan in support of the enrollee's initial complaint; and

    (C) A list of the names, addresses, and telephone numbers of each licensed health care provider who cared for the enrollee and who may have medical records relevant to the external review;

provided that where an expedited review is involved, the managed care plan or its desig-

HMAA's determination by the Commissioner.

On February 15, 2001, Baldado filed a request for an expedited external review of HMAA's denial pursuant to HRS § 432E–6.5 (Supp.2003).[2] In a letter dated February 15,

nee utilization review organization shall provide the documents and information within forty-eight hours of receipt of the request for external review.

Failure by the managed care plan or its designee utilization review organization to provide the documents and information within the prescribed time periods shall not delay the conduct of the external review. Where the plan or its designee utilization review organization fails to provide the documents and information within the prescribed time periods, the commissioner may issue a decision to reverse the final internal determination, in whole or part, and shall promptly notify the independent review organization, the enrollee, the enrollee's appointed representative, if applicable, the enrollee's treating provider, and the managed care plan of the decision;

(4) Upon receipt of the request for external review and upon a showing of good cause, the commissioner shall appoint the members of the panel and shall conduct a review hearing pursuant to chapter 91. If the amount in controversy is less than $500, the commissioner may conduct a review hearing without appointing a review panel;

(5) The review hearing shall be conducted as soon as practicable, taking into consideration the medical exigencies of the case; provided that:

(A) The hearing shall be held no later than sixty days from the date of the request for the hearing; and

(B) An external review conducted as an expedited appeal shall be determined no later than seventy-two hours after receipt of the request for external review;

(6) After considering the enrollee's complaint, the managed care plan's response, and any affidavits filed by the parties, the commissioner may dismiss the request for external review if it is determined that the request is frivolous or without merit; and

(7) The review panel shall review every final internal determination to determine whether the managed care plan involved acted reasonably. The review panel and the commissioner or the commissioner's designee shall consider:

(A) The terms of the agreement of the enrollee's insurance policy, evidence of coverage, or similar document;

(B) Whether the medical director properly applied the medical necessity criteria in section 432E–1.4 in making the final internal determination;

(C) All relevant medical records;

(D) The clinical standards of the plan;

(E) The information provided;

(F) The attending physician's recommendations; and

(G) Generally accepted practice guidelines.

The commissioner, upon a majority vote of the panel, shall issue an order affirming, modifying, or reversing the decision within thirty days of the hearing.

(b) The procedure set forth in this section shall not apply to claims or allegations of health provider malpractice, professional negligence, or other professional fault against participating providers.

(c) No person shall serve on the review panel or in the independent review organization who, through a familial relationship within the second degree of consanguinity or affinity, or for other reasons, has a direct and substantial professional, financial, or personal interest in:

(1) The plan involved in the complaint, including an officer, director, or employee of the plan; or

(2) The treatment of the enrollee, including but not limited to the developer or manufacturer of the principal drug, device, procedure, or other therapy at issue.

(d) Members of the review panel shall be granted immunity from liability and damages relating to their duties under this section.

(e) An enrollee may be allowed, at the commissioner's discretion, an award of a reasonable sum for attorney's fees and reasonable costs incurred in connection with the external review under this section, unless the commissioner in an administrative proceeding determines that the appeal was unreasonable, fraudulent, excessive, or frivolous.

2. HRS § 432E–6.5, entitled "Expedited appeal, when authorized; standard for decision," has not been amended since its insertion in 2000 and currently provides in pertinent part:

(a) An enrollee may request that the following be conducted as an expedited appeal:

. . . .

(2) The external review under section 432E–6 of the managed care plan's final internal determination.

If a request for expedited appeal is approved by the managed care plan or the commissioner, the appropriate review shall be completed within seventy-two hours of receipt of the request for expedited appeal.

(b) An expedited appeal shall be authorized if the application of the forty-five day standard review time frame may:

(1) Seriously jeopardize the life or health of the enrollee. . . .

In other words, an enrollee in an insurance plan may request an expedited external review when the standard review time frame may "seriously jeopardize the life or health of the enrollee." The standard time frame is forty-five days, whereas the expedited appeal must be completed

2001, the Commissioner informed HMAA of Baldado's request for an expedited external review and instructed HMAA to provide the Commissioner with documentation (specifically, the documents used to make HMAA's final internal determination, any documents submitted by Baldado, and a list of all individuals who provided health care to Baldado) within forty-eight hours of the date of the letter. In a letter dated February 16, 2001, HMAA timely responded to the Commissioner's request for documents and also provided a legal memorandum in response to Baldado's appeal. This legal memorandum included the argument that Hawaii's external review law, HRS § 432E–6, was unenforceable as to Baldado's ERISA-covered plan because ERISA preempted HRS § 432E–6.[3] On February 20, 2001, the Commissioner issued a decision and order [hereinafter, Commissioner's coverage order] concluding that Baldado failed to prove that HMAA's denial was improper. Therefore, the Commissioner's coverage order upheld HMAA's internal determination that Baldado was not entitled to coverage. The Commissioner's coverage order also included the following conclusion of law: "A managed care plan's final internal determination is subject to external review, pursuant to HRS chapter 432E. As such, the review panel has jurisdiction over the subject external appeal." HMAA did not appeal the Commissioner's coverage order.

The Commissioner then notified Baldado that he may be entitled to reasonable attorneys' fees and costs under HRS § 432E–6(e). Baldado filed a request for $7,450 in attorneys' fees and $5,012.99 in costs (for the services of a medical consultant). HMAA filed a memorandum in opposition to Baldado's request in which HMAA argued that it, not Baldado, was entitled to attorneys' fees. On March 1, 2001, the Commissioner issued an order [hereinafter, Commissioner's attorneys' fees and costs order] awarding Baldado the attorneys' fees and costs he requested and directing HMAA to pay Baldado's attorney directly. HMAA filed a motion for reconsideration of the Commissioner's attorneys' fees and costs order; on March 22, 2001, the Commissioner denied the motion.

HMAA appealed to the circuit court; however, HMAA appealed only the Commissioner's attorneys' fees and costs order and the order denying HMAA's motion for reconsideration. HMAA did not appeal the Commissioner's coverage order.

In its opening brief to the circuit court, HMAA argued that: (1) HRS § 432E–6 is preempted by ERISA; (2) Baldado was not entitled to attorneys' fees and costs because he was not a prevailing party; (3) attorneys' fees and costs were incorrectly awarded against HMAA because it was the prevailing party; and (4) HMAA was entitled to attorneys' fees pursuant to HRS § 607–14 (Supp. 2000). On December 5, 2001, the circuit court filed its decision and order affirming the Commissioner's attorneys' fees and costs order and the Commissioner's March 22, 2001 order denying HMAA's motion for reconsideration. The circuit court found and concluded that HRS § 432E–6 is not preempted by ERISA and that the Commissioner did not err when he awarded attorneys' fees and costs to Baldado pursuant to HRS § 432E–6(e). On February 4, 2002, the circuit court entered judgment in favor of Baldado and the Commissioner and against HMAA. On February 12, 2002, HMAA filed a timely appeal to this court.

## II. STANDARDS OF REVIEW

A. *Secondary Appeals*

Review of a decision made by the circuit court upon its review of an agen-

---

within seventy-two hours of the receipt of the request for an expedited appeal.

3. Specifically, HMAA argued that HRS § 432E–1 exempts employee benefit plans governed by ERISA and that a finding that HRS § 432E–6 applied would constitute unlawful state action. HMAA also argued that the federal courts had repeatedly held that ERISA preempts claims under state laws and that Hawaii's enforcement scheme directly interferes with the rights HMAA has under ERISA. In its legal memorandum, HMAA objected to the short notice and response time and stated that if the Commissioner took any adverse action on HMAA's coverage decision, HMAA would want the opportunity to have a full hearing and present witnesses. Furthermore, HMAA stated that the request for a full hearing and its filing of documents with the Commissioner did not demonstrate an intent to waive HMAA's position that Hawaii's external review law was not applicable to ERISA plans.

cy's decision is a secondary appeal. The standard of review is one in which this court must determine whether the circuit court was right or wrong in its decision, applying the standards set forth in HRS § 91–14(g) [ (1993) ] to the agency's decision.

*Korean Buddhist Dae Won Sa Temple of Hawaii v. Sullivan,* 87 Hawai'i 217, 229, 953 P.2d 1315, 1327 (1998) (quoting *Bragg v. State Farm Mutual Auto. Ins.,* 81 Hawai'i 302, 304, 916 P.2d 1203, 1205 (1996)) (alteration in original). HRS § 91–14, entitled "Judicial review of contested cases," provides in relevant part:

> (g) Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
>
> (1) In violation of constitutional or statutory provisions; or
>
> (2) In excess of the statutory authority or jurisdiction of the agency; or
>
> (3) Made upon unlawful procedure; or
>
> (4) Affected by other error of law; or
>
> (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
>
> (6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

"[U]nder HRS § 91–14(g), conclusions of law are reviewable under subsections (1), (2), and (4); questions regarding procedural defects under subsection (3); findings of fact under subsection (5); and an agency's exercise of discretion under subsection (6)." *In re Hawaiian Elec. Co.,* 81 Hawai'i 459, 465, 918 P.2d 561, 567 (1996) (citing *Outdoor Circle v. Harold K.L. Castle Trust Estate,* 4 Haw.App. 633, 638–39, 675 P.2d 784, 789 (1983)).

*Paul's Elec. Serv., Inc. v. Befitel,* 104 Hawai'i 412, 416–17, 91 P.3d 494, 498–99 (2004).

B. *Statutory Interpretation And Subject Matter Jurisdiction*

▆ This court has stated:

We review the circuit court's interpretation of a statute *de novo. State v. Pacheco,* 96 Hawai'i 83, 94, 26 P.3d 572, 583 (2001). Our statutory construction is guided by established rules:

> When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.
>
> . . . .

*Id.* at 94–95, 26 P.3d at 583–84.

*Troyer v. Adams,* 102 Hawai'i 399, 409, 77 P.3d 83, 93 (2003) (quoting *Coon v. City & County of Honolulu,* 98 Hawai'i 233, 245, 47 P.3d 348, 360 (2002)).

▆ "Whether a court possesses subject matter jurisdiction is a question of law reviewable *de novo.*" *In re Doe Children: John, Born on January 27, 1987, & Jane, Born on July 31, 1988, minors,* 105 Hawai'i 38, 52, 93 P.3d 1145, 1159 (2004) (citations and internal quotation signals omitted).

## III. *DISCUSSION*

A. *This Court Is Not Precluded from Reaching the Issue of ERISA Preemption.*

▆ Baldado and the Commissioner both argue that HMAA's arguments regarding ERISA preemption are precluded. Baldado argues that HMAA is precluded from raising the issue of ERISA preemption altogether because HMAA did not appeal the Commissioner's coverage order (which denied coverage to Baldado but concluded that HMAA was subject to Hawaii's external review law.) The Commissioner, on the other hand, concedes that HMAA may contest ERISA's preemption of HRS § 432E–6(e) (the subsection of the external review law that gives the Commissioner the authority to grant attorneys' fees and costs), but argues that HMAA is precluded from arguing that ERISA

preempts any other section of HRS § 432E–6.

■ We disagree with Baldado and the Commissioner. The Commissioner's authority to hear external review appeals, as well as the circuit court's authority to review the Commissioner's rulings stemming from those appeals, are questions of subject matter jurisdiction. *See Int'l Bhd. of Painters & Allied Trades Local Union 1944 v. Befitel*, 104 Hawai'i 275, 281, 88 P.3d 647, 653 (2004) (" 'Subject matter jurisdiction is concerned with whether the court has the power to hear a case.' " (Quoting *Pele Def. Fund v. Puna Geothermal Venture*, 77 Hawai'i 64, 67, 881 P.2d 1210, 1213 (1994).)), *recons. denied*, —— P.3d ——, 2004 Haw. LEXIS 376 (2004). And as we have stated, "[i]t is well-established ... that lack of subject matter jurisdiction can never be waived by any party at any time." *Chun v. Employees' Ret. Sys. of Hawai'i*, 73 Haw. 9, 14, 828 P.2d 260, 263 (1992). *See also Amantiad v. Odum*, 90 Hawai'i 152, 159, 977 P.2d 160, 167 (1999) ("When reviewing a case where the circuit court lacked subject matter jurisdiction, the appellate court retains jurisdiction, not on the merits, but for the purpose of correcting the error in jurisdiction."). We therefore consider these questions because they address the subject matter jurisdiction of the Commissioner and the circuit court.[4]

B. *HRS § 432E–6 Is Not Expressly Preempted.*

■ Although ERISA expressly preempts state laws relating to the regulation of em-

ployee welfare benefit plans, this express preemption clause does not apply to state laws that "regulate[ ] insurance." 29 U.S.C. § 1144 (2000). As discussed in subsection 1, *infra*, all state statutes that relate to employee benefit plans are expressly preempted pursuant to 29 U.S.C. § 1144(a). Because HRS § 432E–6 is a state statute that relates to employee benefit plans, ERISA appears, at first glance, to preempt HRS § 432E–6. Nevertheless, as discussed in subsection 2, *infra*, state statutes are "saved" from preemption if the statutes "regulate[ ] insurance." 29 U.S.C. § 1144(b)(2)(A). Consequently, we conclude that ERISA does not *expressly* preempt HRS § 432E–6.[5]

1. **Baldado's health plan is an employee benefit plan subject to ERISA.**

Baldado's health plan is an employee benefit plan within the scope of ERISA because it is a plan maintained by Baldado's employer. *See* 29 U.S.C. § 1003(a) (2000).[6] ERISA contains broad language preempting "any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan." 29 U.S.C. § 1144(a) [7] (emphasis added). Thus, at first glance, ERISA appears to preempt HRS § 432E–6. As discussed in the following subsection, however, ERISA contains a saving clause for laws such as HRS § 432E–6 that "regulate[ ] insurance"; consequently, HRS § 432E–6 is not subject to ERISA's express preemption clause, § 1144(a).

---

**4.** Consequently, we need not address whether res judicata or collateral estoppel precludes HMAA from arguing that ERISA preempts Hawaii's external review law.

**5.** However, as discussed in Section C, *infra*, we hold that ERISA does preempt HRS § 432E–6 because Hawaii's external review law conflicts with ERISA.

**6.** 29 U.S.C. § 1003, entitled "Coverage," provides in relevant part:
(a) Except as provided in subsection (b) of this section and in section 1051, 1081, and 1101 of this title, this subchapter shall apply to any employee benefit plan if it is established or maintained—
(1) by any employer engaged in commerce or in any industry or activity affecting commerce; or

(2) by any employee organization or organizations representing employees engaged in commerce or in any industry or activity affecting commerce; or
(3) by both.

**7.** 29 U.S.C. § 1144 provides in relevant part:

(a) **Supersedure; effective date**
Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.

### 2. HRS § 432E–6 "regulates insurance" and therefore is saved from express preemption.

A state law may be saved from direct preemption if the law "regulates insurance." 29 U.S.C. § 1144(b)(2)(A).[8] We hold that HRS § 432E–6 "regulates insurance" and therefore is saved from express ERISA preemption. Furthermore, based on the United States Supreme Court's holdings in *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 122 S.Ct. 2151, 153 L.Ed.2d 375 (2002), and *Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 123 S.Ct. 1471, 155 L.Ed.2d 468 (2003), we reject HMAA's arguments for preemption.

HRS § 432E–6 is saved by the saving clause in 29 U.S.C. § 1144(b)(2)(A) because it meets the two-part test in *Kentucky Ass'n of Health Plans, Inc. v. Miller*. In *Miller*, the United States Supreme Court held:

> [F]or a state law to be deemed a "law . . . which regulates insurance" under § 1144(b)(2)(A), it must satisfy two requirements. First, the state law must be specifically directed toward entities engaged in insurance. See *Pilot Life [Ins. Co. v. Dedeaux*, 481 U.S. 41, 50, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987)], *UNUM [Life Ins. Co. of Am. v. Ward*, 526 U.S. 358, 368, 119 S.Ct. 1380, 143 L.Ed.2d 462 (1999)]; *Rush Prudential, supra*, at 366, 122 S.Ct. 2151. Second, . . . the state law must substantially affect the risk pooling arrangement between the insurer and the insured.

538 U.S. at 341–42, 123 S.Ct. 1471 (some alterations in original and some added).[9]

As to the first part of the test—that a state law must be "specifically directed toward entities engaged in insurance"—*Miller* requires that a state law "impos[e] conditions on the right to engage in insurance" to deserve the protections of the saving clause. *Id.* at 338, 123 S.Ct. 1471. The Hawai'i external review statute meets the first part of the *Miller* test because it is specifically directed toward entities engaged in insurance and it imposes conditions on the right to engage in the business of insurance in Hawai'i. Any insurer who wishes to provide health insurance must submit to an external review of its internal coverage or benefits determinations; if an insurer fails to comply with this requirement, the Commissioner may take away the insurer's license to conduct business in the state.[10] Thus, the Hawai'i law regulates insurance because the right to engage in business in Hawai'i is conditioned upon the insurer's submission to the external review procedure.

Hawaii's external review law, HRS 432E–6, also satisfies the second prong of the *Miller* test. The external review law alters the terms of insurance policies by creating an additional review process for an insurer's denial of coverage. This alteration of the terms of health insurance policies is more than sufficient to satisfy the second prong of the *Miller* test: as the Supreme Court stated, "We have never held that state laws must alter or control the actual terms of insurance policies to be deemed 'laws . . . which regu-

---

8. 29 U.S.C. § 1144(b)(2)(A) provides: "Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking or securities."

9. The *Miller* court provided an example of a state statute that regulated insurance but did not substantially affect the risk pooling arrangement: "A state law requiring all insurance companies to pay their janitors twice the minimum wage would not 'regulate insurance,' even though it would be a prerequisite to engaging in the business of insurance, because it does not substantially affect the risk pooling arrangement undertaken by insurer and insured." *Miller*, 538 U.S. at 338, 123 S.Ct. 1471.

10. Under Hawaii's external review statute, the Commissioner is required to issue an order that

affirms, modifies, or reverses the internal determination of the insurer. HRS § 432E–8 (Supp. 2003) authorizes the Commissioner to enforce an order pursuant to Article 2 of chapter 431. Within Article 2 is HRS § 431:2–203(c) (Supp. 2003), which provides that if an insurance licensee "persistently, substantially violates . . . an order of the commissioner . . . the commissioner may . . . in whole or in part, suspend, place on probation, limit or refuse to renew the license or certificate of authority[.]" A license is required for selling, soliciting, or negotiating insurance in this state. HRS § 431:9A–103 (Supp.2003). Therefore, if a managed care plan does not submit to an external review, the Commissioner may restrict or terminate the ability of the insurer to conduct business in Hawai'i.

lat[e] insurance' under § 1144(b)(2)(A); it suffices that they substantially affect the risk pooling arrangement between insurer and insured." *Miller*, 538 U.S. at 338, 123 S.Ct. 1471 (alterations in original). *See also id.* at 338–39, 123 S.Ct. 1471 (stating that an Illinois independent review statute, similar to HRS § 432E–6 and upheld in *Rush Prudential*, 536 U.S. at 355, 122 S.Ct. 2151, was a law that "regulate[d] insurance" because it "alter[ed] the scope of permissible bargains between insurers and insureds"). Like the "notice-prejudice" rule (which states that an insurer will not be relieved of liability based on an insured's untimely notice of a claim unless the insurer demonstrates that it has been prejudiced as a result of the late notice, *see Standard Oil Co. of California v. Hawaiian Ins. & Guar. Co., Ltd.*, 65 Haw. 521, 526 n. 4, 654 P.2d 1345, 1348 n. 4 (1982)), the external review law "dictates to the insurance company the conditions under which it must pay for the risk that it has assumed. This certainly qualifies as a substantial effect on the risk pooling arrangement between the insurer and insured." *Miller*, 538 U.S. at 339 n. 3, 123 S.Ct. 1471 (citing *UNUM Life Ins. Co. of Am. v. Ward*, 526 U.S. 358, 368, 119 S.Ct. 1380, 143 L.Ed.2d 462 (1999) (holding that California's "notice-prejudice" rule "regulate[d] insurance" for the purposes of ERISA's saving clause)). If an insurer denies coverage for a particular medical procedure, the insurer must be prepared to participate in an external review procedure upon request by the insured; insurers who do not comply with this requirement risk losing their licenses or certificates of authority to engage in the business of insurance in Hawai'i. HRS § 431:2–203(c) (Supp.2003) (providing that if an insurance licensee "persistently or substantially violates ... an order of the commissioner, ... the commissioner may, ... in whole or in part, suspend, place on probation, limit or refuse to renew the license or certificate of authority").

HMAA argues that HRS § 432E–6 is not covered by the saving clause because (1)

HMAA is not an insurance company regulated under Hawaii's insurance code (HRS chapter 431) and (2) HRS § 432E–6 regulates health care as well as insurance. HMAA's arguments were addressed and rejected by the United States Supreme Court in *Rush Prudential*. In *Rush Prudential*, the health maintenance organization (HMO) involved argued that the state statute at issue was not saved from ERISA preemption because (1) the HMO was a health care provider as well as an insurer, and (2) the statute affected both insurance and noninsurance activities. *Rush Prudential*, 536 U.S. at 366, 370, 122 S.Ct. 2151. The *Rush Prudential* Court did not find the HMO's arguments persuasive. In addressing the HMO's first argument, the Court stated that an HMO is both a health care provider and an insurer: there was "[n]othing in the saving clause requires an either-or choice between health care and insurance in deciding a preemption question, and as long as providing insurance fairly accounts for the application of state law, the saving clause may apply." *Id.* at 367, 122 S.Ct. 2151. In addressing the second argument, the Court concluded that the possibility that the state statute could affect noninsurers was not enough "to remove a state law entirely from the category of insurance regulation saved from preemption." *Id.* at 372, 122 S.Ct. 2151. Therefore, under a reading of *Rush Prudential*, HMAA's arguments are not persuasive.

Based on the foregoing, we hold that HRS § 432E–6, as a law that "regulates insurance," is not expressly preempted by ERISA.

C. *HRS § 432E–6 Is Impliedly Preempted By ERISA's Civil Enforcement Remedy.*

Even though HRS § 432E–6 "regulates insurance" pursuant to § 1144(b)(2)(A), Hawaii's external review law will nevertheless be deemed preempted if it conflicts with ERISA's civil enforcement scheme, 29 U.S.C. § 1132(a) (2000) [hereinafter, § 1132(a) ].[11] Based on the following, we hold that ERISA

11. 29 U.S.C. § 1132 provides in relevant part:
(a) Persons empowered to bring a civil action
A civil action may be brought—
(1) by a participant or beneficiary—
...

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]

preempts Hawaii's external review law and that Hawaii's external review law is therefore unenforceable. In subsection 1, we define the two types of implied preemption: "field" preemption and "conflict" preemption. In subsection 2, we examine field preemption as applied to ERISA. And in subsection 3, we examine conflict preemption as applied to ERISA, focusing the discussion on conflict preemption as applied to state laws that "regulate[ ] insurance" and concluding that HRS § 432E–6 is preempted by ERISA. Consequently, we hold that the circuit court erred in affirming the Commissioner's award of attorneys' fees.

## 1. The Doctrine of Implied Preemption

As the United States Supreme Court has stated:

> We have recognized that a federal statute implicitly overrides state law either when the scope of a statute indicates that Congress intended federal law to occupy a field exclusively, *English v. General Elec. Co.,* 496 U.S. 72, 78–79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990), or when state law is in actual conflict with federal law. We have found implied conflict pre-emption where it is "impossible for a private party to comply with both state and federal requirements," *id.,* at 79, 110 S.Ct. 2270, or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941).

*Freightliner Corp. v. Myrick,* 514 U.S. 280, 287, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995). Thus, HRS § 432E–6 will be deemed preempted if it conflicts with § 1132(a) ("conflict" preemption) or if Congress intended ERISA to occupy the entire field of HMO regulation ("field" preemption). *Cf. Casumpang v. ILWU, Local 142,* 94 Hawai'i 330, 339, 13 P.3d 1235, 1244 (2000) ("Traditionally, federal preemption cases have been grouped into three categories: (1) express preemption; (2) implied preemption; and (3) conflict preemption.").

## 2. Implied field preemption as applied to ERISA

■ ERISA's express preemption and saving clauses demonstrate that ERISA does not impliedly preempt the entire field of HMO regulation. As the United States Supreme Court has stated:

> When Congress has considered the issue of pre-emption and has included in the enacted legislation a provision explicitly addressing that issue, and when that provision provides a reliable indicium of congressional intent with respect to state authority, there is no need to infer congressional intent to pre-empt state laws from the substantive provisions of the legislation. Such reasoning is a variant of the familiar principle of *expressio unius est exclusio alterius:* Congress' enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted.

*Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 517, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (citations and internal quotation signals omitted). *See also Rush Prudential,* 536 U.S. at 365, 122 S.Ct. 2151 ("[T]he historic police powers of the States were not [meant] to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." (Citations and internal quotation signals omitted.) (Second alteration in original.)). That ERISA contains an express preemption clause and a saving clause demonstrates that Congress did not intend ERISA to occupy the entire field of HMO regulation. Furthermore, in *Rush Prudential,* the Supreme Court held that a state law regulating the insurance features of an HMO was saved by § 1144(b)(2)(A), even though the HMO in question contracted to provide medical services for an ERISA-covered employee welfare benefit plan. *Rush Prudential,* 536 U.S. at 359, 122 S.Ct. 2151. Additionally, as the Supreme Court stated in *English v. General Electric Co.,* 496 U.S. 72, 79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990):

> Although this Court has not hesitated to draw an inference of field pre-emption where it is supported by the federal statutory and regulatory schemes, it has em-

phasized: "Where ... the field which Congress is said to have pre-empted" includes areas that have "been traditionally occupied by the States," congressional intent to supersede state laws must be " 'clear and manifest.' " (Quoting *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)).) Health care is " 'a subject of traditional state regulation,' " *Rush Prudential*, 536 U.S. at 387, 122 S.Ct. 2151 (quoting *Pegram v. Herdrich*, 530 U.S. 211, 237, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000)); therefore, because we can find no clear and manifest congressional intent to supersede state-law HMO regulations, we hold that implied field preemption does not apply to Hawaii's external review statute.

### 3. Conflict preemption as applied to ERISA

Although the existence of express preemption and saving clauses indicates that Congress did not intend to preempt the entire field of HMO regulation, the existence of these clauses does not necessarily mean that conflict preemption cannot exist. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, ——, 124 S.Ct. 2488, 2500, 159 L.Ed.2d 312 (2004) (stating that "[U]nder ordinary principles of conflict pre-emption, ... even a state law that can arguably be characterized as 'regulating insurance' will be pre-empted if it provides a separate vehicle to assert a claim for benefits outside of, or in addition to, ERISA's remedial scheme."); *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 352, 121 S.Ct. 1012, 148 L.Ed.2d 854 (2001) ("[N]either an express pre-emption provision nor a saving clause 'bar[s] the ordinary working of conflict pre-emption principles.' " (Quoting *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 869, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000).) (Second alteration in original.)). *See also Geier*, 529 U.S. at 869, 120 S.Ct. 1913 (discussing the National Traffic and Motor Vehicle Safety Act of 1966 and stating that "[w]e now conclude that the saving clause (like the express pre-emption provision) does *not* bar the ordinary working of conflict pre-emption principles").

In *Aetna Health*, a unanimous Supreme Court held that a state statute was preempted because it conflicted with ERISA. At issue was a Texas statute that created a cause of action against HMOs for failure to exercise ordinary care in handling coverage decisions. *Aetna Health*, 542 U.S. at —— - ——, 124 S.Ct. at 2492–93. Justice Thomas, writing for the Court, stated that "[t]he purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans" and concluded that the statute was preempted because "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Id.* at 2495. The Court further held that "[u]nder ordinary principles of conflict pre-emption, ... even a state law that can arguably be characterized as 'regulating insurance' will be pre-empted if it provides a separate vehicle to assert a claim for benefits outside of, or in addition to, ERISA's remedial scheme." *Id.* at 2500. Thus, according to *Aetna Health*, any state law that creates a claim for relief relating to an ERISA-regulated employee benefit plan necessarily conflicts with § 1132(a) and is therefore preempted. *See id.*

Although *Aetna Health* offers an expansive interpretation of the preemptive effects of § 1132(a), an earlier Supreme Court case, *Rush Prudential*, 536 U.S. at 365–87, 122 S.Ct. 2151, strongly suggests that some state laws that "regulate[ ] insurance," such as HRS § 432E–6, survive § 1132(a)'s preemptive scope. Given *Aetna Health's* expansive language, whether *Rush Prudential* survives *Aetna Health* is not entirely clear.

In the remainder of this subsection, we first examine *Rush Prudential*, a case involving a state-mandated regulatory scheme similar to HRS § 432E–6 (*see* subsection a, *infra*). We then attempt to reconcile *Rush Prudential* and *Aetna Health;* we conclude that *Aetna Health* prohibits the states from creating new claims for relief but allows the states to regulate insurance by creating additional procedural regulations for insurers (*see* subsection b, *infra*). Therefore, we hold that *Rush Prudential* survives *Aetna Health*.

We then apply this analysis to HRS § 432E–6 and conclude that ERISA preempts Hawaii's external review law (*see* subsection c, *infra* ).

### a. *Rush Prudential HMO, Inc. v. Moran*

In *Rush Prudential,* the Supreme Court considered an Illinois statute similar to HRS § 432E–6. According to the Illinois statute, when an HMO denied a patient's claim for certain types of health care coverage, the HMO was required to honor the patient's request for an independent medical review of the patient's claim. *Rush Prudential,* 536 U.S. at 359, 361, 122 S.Ct. 2151. The statute mandated that the independent medical review be done by " 'a physician holding the same class of license as the primary care physician, who is unaffiliated with the [HMO], jointly selected by the patient ..., primary care physician and the [HMO].' " [12] *Id.* at 361, 122 S.Ct. 2151 (quoting 215 Ill. Comp. Stat. 125/4–10 (2000) [hereinafter, § 4–10] ) (ellipsis in original). The statute provided that " '[i]n the event that the reviewing physician determines the covered service to be medically necessary, the [HMO] shall provide the covered service.' " *Id.* (quoting § 4–10). The Court explained that the independent review statute was similar to arbitration in that the independent reviewer was entitled to consider the HMO contract in addition to evidence such as medical records; however, despite these similarities, the Court stated that § 4–10 "does not resemble either contract interpretation or evidentiary litigation before a neutral arbiter, as much as it looks like a practice (having nothing to do with arbitration) of obtaining another medical opinion." *Id.* at 382–83, 122 S.Ct. 2151.

A divided Court upheld § 4–10. Justice Souter, writing for the Court, stated that the Illinois statute was not preempted because it did not create a new claim for relief:

[T]his case addresses a state regulatory scheme that provides no new cause of action under state law and authorizes no new form of ultimate relief. While independent review under § 4–10 may well settle the fate of a benefit claim under a particular contract, the state statute does not enlarge the claim beyond the benefits available in any action brought under § 1132(a). And although the reviewer's determination would presumably replace that of the HMO as to what is "medically necessary" under this contract, the relief ultimately available would still be what ERISA authorizes in a suit for benefits under § 1132(a).

*Id.* at 379–80, 122 S.Ct. 2151 (footnote omitted). The *Rush Prudential* Court recognized that allowing the states to establish these types of procedures would somewhat undermine ERISA's purpose in establishing a "uniform federal regime of 'rights and obligations' under ERISA." *Id.* at 381, 122 S.Ct. 2151. However, the Court stated, " '[s]uch disuniformities ... are the inevitable result of the congressional decision to 'save' local insurance regulation.' " *Id.* (quoting *Metro. Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 747, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985)) (alterations in original). The Court acknowledged its previous holding in *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 57, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (holding that Congress had "clearly express[ed], through the structure and legislative history of ... ERISA, an intention that the federal remedy ... displace state causes of action") and explained that a state statute might "so resemble an adjudication as to fall within *Pilot Life's* categorical bar." *Rush Prudential,* 536 U.S. at 381, 122 S.Ct. 2151. Nevertheless, the Court upheld the Illinois statute because the statute "does not implicate ERISA's enforcement scheme at all" and "imposes no new obligation or remedy." [13] *Id.* at 386, 122 S.Ct. 2151.

**12.** In *Rush Prudential,* the patient sued the HMO to compel compliance with the Illinois statute; the HMO, however, removed the case to federal court and argued that ERISA's civil enforcement provision preempted the Illinois regulatory scheme. *Rush Prudential,* 536 U.S. at 362, 122 S.Ct. 2151.

**13.** The Court constrained its holding, however, with the following footnote:

We do not mean to imply that States are free to create other forms of binding arbitration to provide *de novo* review of any terms of insurance contracts; as discussed above, our decision rests in part on our recognition that the disuniformity Congress hoped to avoid is not

Justice Thomas, joined by Chief Justice Rehnquist, Justice Scalia, and Justice Kennedy, dissented. *Id.* at 388, 122 S.Ct. 2151. Justice Thomas (who later wrote for the Court in *Aetna Health*) argued that ERISA's civil enforcement scheme was intended to be exclusive: "Such exclusivity of remedies is necessary to further Congress' interest in establishing a uniform federal law of employee benefits so that employers are encouraged to provide benefits to their employees[.]" *Id.* He contended that § 4–10 was an alternative state-law remedy and that the Court had consistently held that such state-law remedies conflicted with ERISA's civil enforcement scheme. *Id.* at 393–94, 122 S.Ct. 2151. He stated that, while the states are entitled to regulate health care, the states are not entitled to circumvent ERISA by creating alternative procedures like those in § 4–10:

> [W]ere a State to require that insurance companies provide all "medically necessary care" or even that it must provide a second opinion before denying benefits, I have little doubt that such *substantive* requirements would withstand ERISA's pre-emptive force. But recourse to those benefits, like all others, could be sought only through an action under § [1132] and not, as is the case here, through an arbitration-like remedial device. Section 4–10 does not, in any event, purport to extend a new substantive benefit. Rather, it merely sets up a procedure to conclusively determine whether the HMO's decision to deny benefits was correct when the parties disagree, a task that lies within the exclusive province of the courts through an action under § [1132(a)].

*Id.* at 399, 122 S.Ct. 2151. Justice Thomas conceded that ERISA's saving clause allowed for some lack of uniformity, but stated that

"[a]llowing disparate state laws that provide inconsistent external review requirements to govern a participant's or beneficiary's claim to benefits under an employee benefit plan is wholly destructive of Congress' expressly stated goal of uniformity in this area." *Id.* at 400–01, 122 S.Ct. 2151.

b. *Interpreting Rush Prudential in light of Aetna Health*

The next question is whether *Rush Prudential* and *Miller* (discussed *supra*) survive *Aetna Health;* in other words, does ERISA's saving clause still have meaning, or are *all* state laws relating to employee benefit plans preempted by § 1132(a)? We believe that the United States Supreme Court's holding in *Aetna Health* was not intended to overrule *Rush Prudential* or *Miller*. Based on *Aetna Health, Miller*, and *Rush Prudential*, we believe that the Hawai'i legislature may continue to "regulate[ ] insurance" so long as the legislature does not create a "cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy." *Aetna Health*, 542 U.S. at ——, 124 S.Ct. at 2495. Reading *Rush Prudential* and *Aetna Health* together, we believe that the Supreme Court intended to distinguish between state laws that (1) create a state law claim for relief against an employee benefit plan and (2) require insurers to provide certain procedural protections to insureds (even if the insurance is provided as part of an ERISA-covered employee benefit plan).

*Aetna Health* struck down the state statute at issue because "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Aetna Health*, 542 U.S. at ——, 124 S.Ct. at 2495. The Su-

implicated by decisions that are so heavily imbued with expert medical judgments. Rather, we hold that the feature of § 4–10 that provides a different standard of review with respect to mixed eligibility decisions from what would be available in court is not enough to create a conflict that undermines congressional policy in favor of uniformity of remedies. *Rush Prudential*, 536 U.S. at 386 n. 17, 122 S.Ct. 2151. The Court also stated that "any lingering doubt about the reasonableness of § 4–10 in af-

fecting the application of § 1132(a) may be put to rest by recalling that regulating insurance tied to what is medically necessary is probably inseparable from enforcing the quintessentially state-law standards of reasonable medical care." *Id.* at 387, 122 S.Ct. 2151.

As discussed in subsection c, *infra*, HRS § 432E–6 differs from § 4–10 in several crucial ways, such that HRS § 432E–6 is not protected by *Rush Prudential*.

**34**

preme Court has consistently struck down state laws that create claims for relief against ERISA-covered employee benefit plans, even if those state laws also regulate insurance. *See, e.g., Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 135, 145, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990) (holding that an employee's claim for relief for wrongful discharge based on state common law was preempted by § 1132(a)); *Pilot Life,* 481 U.S. at 57, 107 S.Ct. 1549 (holding that a state common law claim for bad faith did not fall under the saving clause and was therefore preempted by § 1144(a)). As the United States Court of Appeals for the Third Circuit recently explained:

> Reading *Pilot Life, Rush Prudential,* and *Aetna Health* together, a state statute is preempted by ERISA if it provides "a form of ultimate relief in a judicial forum that added to the judicial remedies provided by ERISA," *Rush Prudential,* 536 U.S. at 379, 122 S.Ct. 2151, or stated another way, if it "duplicates, supplements, or supplants the ERISA civil enforcement remedy." *Aetna Health,* 542 U.S. at ——, 124 S.Ct. at 2495 (citing *Pilot Life,* 481 U.S. at 54–56, 107 S.Ct. 1549).

*Barber v. Unum Life Ins. Co. of Am.,* 383 F.3d 134, 140 (3d Cir.2004).

In contrast, *Rush Prudential* upheld the state statute at issue because it was "a state regulatory scheme that provide[d] no new cause of action under state law and authorize[d] no new form of ultimate relief." *Rush Prudential,* 536 U.S. at 379, 122 S.Ct. 2151. As *Rush Prudential* demonstrates, the Court has been careful not to "read the saving clause out of the statute." *Metro. Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 747, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985). Although

the dissenting Justices in *Rush Prudential* argued that state insurance regulations would undermine congressional intent (by corroding uniformity in the area of employee welfare benefit plans), the majority rejected this argument. Instead, the majority held that the states were entitled to require insurers to comply with certain procedural requirements as a condition of engaging in the business of insurance within the state's borders. *See Rush Prudential,* 536 U.S. at 379–80, 122 S.Ct. 2151. Again, the Court limited states' power by stating that a state law would be preempted if it enlarged a claim for benefits beyond what was available pursuant to § 1132(a): "[T]he relief ultimately available would still be what ERISA authorizes in a suit for benefits under § 1132(a)." *Id.* at 380, 122 S.Ct. 2151.

Thus, both *Rush Prudential* and *Aetna Health* hold that a state may not create a new "cause of action." [14] Both cases preserve the states' right to regulate insurance so long as those insurance regulations do not conflict with ERISA's civil enforcement scheme. In sum, *Aetna Health* does not overrule *Rush Prudential.* [15] Therefore, we hold that a state law that "regulates insurance" is not preempted so long as it does not create a new claim for relief and does not enlarge a claim for benefits beyond that available in § 1132(a).

The following subsection applies this principle to HRS § 432E–6.

### c. Conflict preemption and HRS § 432E–6

█ We hold that HRS § 432E–6, a law that "regulates insurance," conflicts with § 1132(a) because HRS § 432E–6 "so resem-

---

**14.** A "cause of action" is:

> 1. A group of operative facts giving rise to one or more bases for suing; a factual situation that entitles one person to obtain a remedy in court from another person; CLAIM....
> 2. A legal theory of a lawsuit....
> 3. Loosely, a lawsuit....
>
> *Black's Law Dictionary* 214 (7th ed.1999).

**15.** Indeed, *Rush Prudential* seems to anticipate *Aetna Health,* further evidence that the two cases are consistent. As the Court stated in *Rush Prudential:*

> Although we have yet to encounter a forced choice between the congressional policies of exclusively federal remedies and the "reservation of the business of insurance to the States," *Metropolitan Life,* 471 U.S., at 744 n. 21, 105 S.Ct. 2380, we have anticipated such a conflict, with the state insurance regulation losing out if it allows plan participants "to obtain remedies ... that Congress rejected in ERISA," *Pilot Life, supra,* at 54, 107 S.Ct. 1549.

*Rush Prudential,* 536 U.S. at 377, 122 S.Ct. 2151 (alteration in original).

ble[s] an adjudication as to fall within *Pilot Life's* categorical bar." *Rush Prudential,* 536 U.S. at 381, 122 S.Ct. 2151.

HRS § 432E–6 is very similar to the Illinois statute at issue in *Rush Prudential:* both statutes provide for an independent review of an insurer's denial of benefits; both statutes require the reviewing individual(s) to consider the medical necessity of the procedure at issue; and both statutes allow the reviewing individual(s) to overturn the insurer's denial of coverage. *See* HRS § 432E–6; 215 Ill. Comp. Stat. 125/4–10. Both statutes allow the reviewing individual(s) limited authority to interpret the terms of the insurance contract. *See* HRS § 432E–6(a)(7) (providing that the review panel must consider "[t]he terms of the agreement of the enrollee's insurance policy, evidence of coverage, or similar document" in determining whether the HMO acted reasonably); *Rush Prudential,* 536 U.S. at 380, 383, 122 S.Ct. 2151 (stating that "the reviewer's determination would presumably replace that of the HMO as to what is 'medically necessary' under this contract" but recognizing that the Illinois statute "does not give the independent reviewer a free-ranging power to construe contract terms, but instead, confines review to ... the phrase 'medical necessity[ ]' "). Neither statute creates a claim for relief upon which an aggrieved beneficiary or participant can file a lawsuit, and neither statute enlarges a beneficiary's or participant's claim for benefits beyond what she or he could obtain pursuant to § 1132(a). *See* HRS § 432E–6; 215 Ill. Comp. Stat. 125/4–10.

Nevertheless, the Illinois statute and HRS § 432E–6 differ in several important ways. First, Hawaii's external review incorporates HRS chapter 91, the Hawai'i Administrative Procedure Act (HAPA). *See* HRS § 432E–6(a)(4) (stating that "the commissioner shall appoint the members of the panel and shall conduct a review hearing pursuant to chapter 91"). HAPA sets forth the procedural requirements for contested case hearings, *see, e.g.,* HRS § 91–9 (1993 & Supp.2003) (providing that all parties in a contested case "shall be afforded an opportunity for hearing after reasonable notice"); more importantly, HAPA provides for judicial review of contested cases: "[a]ny person aggrieved by a final decision and order in a contested case ... is entitled to judicial review thereof under this chapter[.]" HRS § 91–14 (1993). Second, whereas the Illinois statute considered in *Rush Prudential* required one physician to determine whether the proposed procedure was "medically necessary," the Hawai'i statute provides for a three-member panel (only one of whom must be a physician) to determine whether the HMO's actions were "reasonable."

These distinctions are fatal to the external review law. The external review hearing more closely resembles "contract interpretation or evidentiary litigation before a neutral arbiter" than "a practice (having nothing to do with arbitration) of obtaining another medical opinion." *Rush Prudential,* 536 U.S. at 383, 122 S.Ct. 2151. More damaging, however, is the right of either party to seek judicial review. For example, a claimant who is denied benefits pursuant to Hawaii's external review law can appeal that denial to the courts, allowing for a judicial determination of the claimant's entitlement to benefits. This is precisely the type of adjudication barred by *Pilot Life,* 481 U.S. at 52, 107 S.Ct. 1549 (holding that § 1132(a) is the "exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits"). *See* HRS § 432E–6; 215 Ill. Comp. Stat. 125/4–10. Thus, although the Hawai'i legislature is entitled to regulate insurance by requiring external review (because external review laws are not necessarily preempted by ERISA), HRS § 432E–6 too closely resembles adjudication and therefore is preempted by § 1132(a).[16] We emphasize, however, that our holding applies only to those plans covered by ERISA: Hawaii's external review law continues to apply to those plans that are

---

**16.** We pause to note that claimants such as Baldado who have relied upon HRS § 432E–6 in pursuing claims for medical coverage have six years from an HMO's denial of coverage in which to file an ERISA claim. *See* HRS § 657–1 (1993) (providing a six-year limitations period for "[a]ctions for the recovery of any debt founded upon any contract, obligation, or liability" and for "[p]ersonal actions of any nature whatsoever not specifically covered by the laws of the State"); *Bd. of Regents of Univ. of State of N.Y. v. Tomanio,* 446 U.S. 478, 483–84, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980) (holding that where Congress does not establish a statute of limitations

excluded from ERISA coverage. *See* 29 U.S.C. § 1003(b) (2000) (excluding, inter alia, governmental and church plans from ERISA coverage).

■ Because Hawaii's external review law is preempted, the Commissioner did not have jurisdiction to consider Baldado's claim. Correspondingly, the Commissioner did not have jurisdiction to award attorneys' fees and costs to Baldado, and the Commissioner's March 1, 2001 and March 22, 2001 orders are void. *See Amantiad v. Odum*, 90 Hawai'i 152, 159, 977 P.2d 160, 167 (1999) ("When reviewing a case where the circuit court lacked subject matter jurisdiction, the appellate court retains jurisdiction, not on the merits, but for the purpose of correcting the error in jurisdiction. A judgment rendered by a circuit court without subject matter jurisdiction is void." (Citations omitted.)).

Similarly, the circuit court's conclusions that Baldado was entitled to attorneys' fees and costs and that HMAA was not entitled to attorneys' fees and costs are void. *See id.*

## IV. CONCLUSION

Based on the foregoing, we vacate the Commissioner's March 1, 2001 order, the Commissioner's March 22, 2001 order, and the circuit court's February 4, 2002 judgment.

applicable to a federal cause of action, "a void which is commonplace in federal statutory law[,] ... this Court has repeatedly 'borrowed' the state law of limitations governing an analogous cause of action"); *Shofer v. Hack Co.*, 970 F.2d 1316, 1319 (4th Cir.1992) ("ERISA does not expressly provide a limitation period for bringing a private action other than for claims of a breach of fiduciary duty. Therefore, for any claim that does not assert that Hack breached a fiduciary duty, the court must look to state law and apply an analogous limitation provision.") *Miles v. New York State Teamsters Conference Pension & Ret. Fund Employee Pension Ben. Plan*, 698 F.2d 593, 598 (2d Cir.1983) ("As ERISA does not prescribe a limitations period for actions under § 1132, the controlling limitations period is that specified in the most nearly analogous state limitations statute.").