318

271 P.3d 613

**HAWAII STATE TEACHERS ASSOCIA-TION and United Public Workers, AFSCME, Local 646, AFL–CIO, Plaintiffs–Appellants/Appellees/Cross–Appellants,**

v.

**Neil ABERCROMBIE**[1]**, Governor, State of Hawai'i; Barbara A. Krieg**[2]**, Interim Director, Department of Human Resources Development, State of Hawai'i; and Kalbert K. Young, Director, Department of Budget and Finance, State of Hawai'i; Doe Defendants 1–10, Defendants–Appellees/Appellants/Cross–Appellees.**

No. 30052.

Supreme Court of Hawai'i.

Jan. 17, 2012.

As Amended Jan. 27, 2012.

---

1. During the pendency of this appeal, Neil Abercrombie, Governor of the State of Hawai'i, succeeded Linda Lingle. Thus, pursuant to Hawai'i Rules of Appellate Procedure (HRAP) Rule 43(c), Abercrombie has been substituted automatically for Lingle in this case.

2. Barbara A. Krieg, Interim Director of the Department of Human Resources Development, State of Hawai'i and Kalbert K. Young, Director, Department of Budget and Finance, State of Hawai'i have been substituted as parties to this appeal pursuant to HRAP 43(c).

Deirdre Marie–Iha, Deputy Solicitor General, Department of the Attorney General (Mark J. Bennett, Attorney General of Hawai'i, Lisa M. Ginoza, First Deputy Attorney General of Hawaii, with her on the briefs) for Defendants–Appellees/Appellants/Cross–Appellees.

Rebecca L. Covert, (Herbert R. Takahashi and Danny J. Vasconcellos of Takahashi Vasconcellos & Covert and Scott A. Kronland, pro hac vice, of Altshuler Berzon LLP with her on the briefs) for Plaintiffs–Appellants/Appellees/Cross–Appellants.

NAKAYAMA, Acting C.J., and DUFFY, J., Circuit Judge AHN in place of MOON, C.J., Recused and Retired, and Circuit Judge LEE, in place of RECKTENWALD J., Recused, with ACOBA, J., dissenting separately.

**3.** Executive order 09–02 defined the term "furlough" as "the placement of an employee temporarily and involuntarily in a non-pay and non-duty status by the Employer because of lack of work or funds, or other non-disciplinary reasons."

**4.** Article XIII, section 2 of the Hawai'i Constitution provides that "[p]ersons in public employment shall have the right to organize for the purpose of collective bargaining as provided by law."

**5.** Article XVI, section 2 of the Hawai'i Constitution provides that "[m]embership in any employ-

Opinion of the Court by NAKAYAMA, J.

In this case, we apply *Hawaii Government Employees Ass'n, AFSCME Local 152, AFL–CIO v. Lingle* (hereinafter "*HGEA* "), 124 Hawai'i 197, 239 P.3d 1 (2010), and hold that the circuit court erred by deciding statutory issues over which the Hawai'i Labor Relations Board ("HLRB") has exclusive original jurisdiction.

## I. BACKGROUND

Briefly stated, in order to reduce labor costs, then-Governor Linda Lingle ("Lingle") announced her decision to furlough[3] all state employees for three days per month and to restrict spending in the Department of Education ("DOE") and University of Hawai'i ("University") in an equal amount. She later filed executive order 09–02, which unilaterally imposed the three-day-per-month furloughs and reduced the DOE's and the University's funding accordingly. In response to executive order 09–02, Hawai'i State Teachers Association and United Public Workers, AFSCME, Local 646, AFL–CIO (collectively, "plaintiffs") brought the instant action, alleging that the furlough plan violated: (1) the right to organize for the purpose of collective bargaining under article XIII, section 2 of the Hawaii Constitution;[4] (2) the employees' right to accrued retirement benefits under article XVI, section 2 of the Hawai'i Constitution;[5] and (3) separation of powers under article III, section 1 of the Hawaii Constitution.[6] The plaintiffs moved for a temporary restraining order, which the Circuit Court of the First Circuit ("circuit court") granted in part on August 28, 2009. Lingle asserted in part that the HLRB had exclusive jurisdiction over the plaintiffs' claims under chapter

ees' retirement system of the State or any political subdivision thereof shall be a contractual relationship, the accrued benefits of which shall not be diminished or impaired."

**6.** Article III, section 1 of the Hawai'i Constitution provides that the "legislative power of the State shall be vested in a legislature, which shall consist of two houses, a senate and a house of representatives. Such power shall extend to all rightful subjects of legislation not inconsistent with this constitution or the Constitution of the United States."

89 of the Hawai'i Revised Statutes (HRS). The circuit court rejected this argument. The circuit court issued its First Amended Findings of Fact and Conclusions of Law on August 28, 2009, which made the following relevant determinations: (1) the plaintiffs were likely to succeed on their article XIII, section 2 claim because Lingle's furlough order concerned a "core subject of collective bargaining"; (2) under the unilateral change doctrine, "the employer cannot implement unilateral changes regarding matters that are mandatory subjects of bargaining ..."; (3) the HLRB did not have exclusive jurisdiction over the plaintiff's claims; (4) *United Public Workers, AFSCME, Local 646, AFL–CIO v. Hanneman,* 106 Hawai'i 359, 105 P.3d 236 (2005), was inapposite; and (5) the management rights enumerated in HRS § 89–9(d) (Supp.2008) did not allow Lingle's unilateral imposition of the furloughs. The circuit court filed its final judgment on September 10, 2009. The circuit court subsequently filed an amended judgment on September 24, 2009.

The plaintiffs appealed on September 10, 2009, asserting that the circuit court erred by: (1) determining "that HRS § 37–37(a) [wa]s a constitutional delegation of budget-reduction authority to the Governor"; and (2) "dismissing Count III of the First Amended Complaint *sua sponte,* without providing [the plaintiffs] with an opportunity to respond." [7] Lingle cross-appealed, asserting in part that the circuit court lacked jurisdiction to determine whether the furlough plan complied with HRS § 89–9(d).

The plaintiffs applied for transfer from the Intermediate Court of Appeals ("ICA") to this court of their appeal and Lingle's cross-appeal. On December 1, 2009, this court entered an order granting the plaintiffs' application for transfer pursuant to HRS § 602–58(a)(1) (Supp.2008).

## II. STANDARDS OF REVIEW

### A. Subject Matter Jurisdiction

■ "Whether a court possesses subject matter jurisdiction is a question of law re-

7. In light of our conclusion that the circuit court lacked subject matter jurisdiction, it is unneces-

viewable de novo." *HGEA,* 124 Hawai'i at 201, 239 P.3d at 5 (internal quotation marks omitted) (quoting *Hawaii Mgmt. Alliance Ass'n v. Ins. Comm'r,* 106 Hawai'i 21, 27, 100 P.3d 952, 957 (2004)).

### B. Statutory Interpretation

■ Questions of statutory interpretation are questions of law reviewable *de novo. Id.* This court follows the following principles when interpreting statutes:

First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. And fifth, in construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning.

*Id.* at 202, 239 P.3d at 6.

## III. DISCUSSION

■ The circuit court determined that it had subject matter jurisdiction over the dispute. The circuit court further determined that the management rights enumerated in HRS § 89–9(d) did not allow Lingle to unilaterally furlough employees.

Lingle asserts that the circuit court erred because it did not have subject matter jurisdiction over the dispute. In response, the plaintiffs assert that: (1) the doctrines of exhaustion of administrative remedies and primary jurisdiction are matters of policy;

sary to address these issues.

and (2) the unique circumstances of this case weigh against requiring the case to proceed before the HLRB.

In *HGEA*, 124 Hawai'i at 200, 239 P.3d at 4, this court held that the HLRB had "exclusive original jurisdiction" over the HRS chapter 89 issues raised by the plaintiffs and that "the circuit court should have deferred ruling on the constitutional issues until after the HLRB had the opportunity to resolve the statutory questions." In *HGEA*, the plaintiffs asserted in their complaint that " *'[t]he Governor does not have the implied right to unilaterally impose furloughs pursuant to HRS § 89–9(d)*' thereby 'circumvent[ing] the collective bargaining process' because '[f]urloughs reduce employee hours and wages and affect terms and conditions of employment and, therefore, are a mandatory subject of collective bargaining negotiation protected by Article XIII, Section 2 of the Hawaii State Constitution and *as prescribed by HRS § 89–9(a).*' " *Id.* at 205, 239 P.3d at 9 (emphases added). The plaintiffs in this case did not make similar allegations with respect to their article XIII, section 2 claim.[8] Because the plaintiffs in the instant case did not raise statutory issues in their complaint, this case presents the question of whether the reasoning in *HGEA* applies when the plaintiffs raise constitutional issues while omitting references to statutory issues the HLRB has exclusive jurisdiction over. We hold that it does, and therefore vacate the circuit court's judgment and remand to the circuit court.

In *HGEA*, HGEA based its request for relief on both statutory and constitutional grounds. *HGEA*, 124 Hawai'i at 200, 239 P.3d at 4. The circuit court granted a preliminary injunction partly on the grounds that: (1) the HLRB did not have exclusive jurisdiction over the dispute; (2) Lingle's decision to unilaterally furlough employees violated article XIII, section 2 of the Hawai'i Constitution; (3) under *NLRB v. Katz*, 369 U.S. 736, 82 S.Ct. 1107, 8 L.Ed.2d 230 (1962), Lingle could not impose furloughs by unilateral action; (4) *United Public Workers, AFSCME, Local 646, AFL–CIO v. Hanneman*, 106 Hawai'i 359, 105 P.3d 236 (2005), was "inapposite"; and (5) Lingle's reliance on HRS § 89–9(d) to justify the furloughs was not persuasive. *HGEA*, 124 Hawai'i at 201, 239 P.3d at 5. This court held that HRS § 89–14 (1993) provided the HLRB with exclusive original jurisdiction over the dispute.

HRS § 89–14 provides that "[a]ny controversy concerning prohibited practices may be submitted to the board in the same manner and with the same effect as provided in section 377–9; *provided that the board shall have exclusive original jurisdiction over such a controversy* ...." (Emphasis added.) This court observed that HRS § 89–13(a) defines the term prohibited practice as follows:

It shall be a prohibited practice for a public employer or its designated representative wilfully to:

. . . .

(5) Refuse to bargain collectively in good faith with the exclusive representative as required in section 89–9;

(6) Refuse to participate in good faith in the mediation and arbitration procedures set forth in section 89–11;

(7) Refuse or fail to comply with any provision of this chapter;

(8) Violate the terms of a collective bargaining agreement.

*HGEA*, 124 Hawai'i at 204, 239 P.3d at 8 (quoting HRS § 89–13(a) (Supp.2003)).

This court held that "[v]iewing the assertions made by HGEA in its first amended complaint in light of HRS § 89–13(a), it appears that HGEA alleges that Lingle essentially engaged in a 'prohibited practice' when she unilaterally imposed furloughs." *Id.* at 205, 239 P.3d at 9. Therefore, this court held that "the HLRB has exclusive original jurisdiction over the statutory claims raised in

---

**8.** The plaintiffs did assert that the "obligation to pay wages and salaries to bargaining units 1, 5 and 10, on and after June 1, 2009 and to maintain hours of work and other terms and conditions of employment are valid obligations and commitments previously incurred: ... [b]y statute under chapter 89 which prohibits any unilat-eral changes in wages, hours of work, and other terms and conditions of employment absent good faith bargaining leading to impasse (which has yet to occur)." However, this assertion occurred in the context of their claim regarding separation of powers.

322

HGEA's complaint." *Id.* at 206, 239 P.3d at 10.

Unlike the plaintiffs in *HGEA*, the plaintiffs here have not referred to HRS chapter 89 in their complaint when arguing that the imposition of furloughs violated article XIII, section 2 of the Hawai'i Constitution. Nevertheless, *HGEA* applies. This is apparent from the text of HRS § 89–14 and the policies enumerated in *HGEA*.

■ The plain language of HRS § 89–14 supports concluding that the instant case is a "controversy concerning prohibited practices" that must first be submitted to the HLRB. Although the term "controversy concerning prohibited practices" is not defined by chapter 89, this court "may resort to legal or other well accepted dictionaries as one way to determine the ordinary meaning of certain terms not statutorily defined." *Nuuanu Valley Ass'n v. City & Cnty. of Honolulu*, 119 Hawai'i 90, 98, 194 P.3d 531, 539 (2008) (internal quotation marks omitted) (quoting *Leslie v. Bd. of Appeals*, 109 Hawai'i 384, 393, 126 P.3d 1071, 1080 (2006)). The term "concerning" is defined as "relating to." *Webster's Unabridged Dictionary* 423 (2d ed. 2001). The term "prohibited practice" is defined in HRS § 89–13 in part as "[r]efus[ing] to bargain collectively in good faith with the exclusive representative as required in section 89–9[,]" "[r]efus[ing] to participate in good faith in the mediation and arbitration procedures set forth in section 89–11[,]" refusing to comply with any provision of chapter 89, and "[v]iolat[ing] the terms of a collective bargaining agreement." HRS § 89–13(a)(5)(8). The plaintiffs' first amended complaint asserts that Lingle violated article XIII, section 2 of the Hawai'i Constitution by imposing a unilateral reduction in wages, prohibiting negotiations regarding the furloughs, and by unilaterally suspending the "collective bargaining process as provided by law" for two years. The plaintiffs' complaint states claims relating to "prohibited prac-

tices" because it ultimately challenges Lingle's ability to unilaterally impose furloughs without collectively bargaining. *See HGEA*, 124 Hawai'i at 205, 239 P.3d at 9 (holding that "HGEA alleges that Lingle essentially engaged in a 'prohibited practice' when she unilaterally imposed furloughs[,]" because HGEA asserted that "[t]he Governor does not have the implied right to unilaterally impose furloughs pursuant to HRS § 89–9(d)" thereby "circumvent[ing] the collective bargaining process . . ."). Deleting references to chapter 89 does not change the fact that the dispute ultimately relates to a prohibited practice. Therefore, the plain language of HRS § 89–14 indicates that the HLRB has exclusive original jurisdiction over the plaintiffs' claims.[9]

This analysis is bolstered by this court's opinion in *HGEA*, where we rejected the plaintiffs' attempt to characterize their statutory claim as a constitutional claim. *HGEA*, 124 Hawai'i at 208, 239 P.3d at 12. This court held that the legislative purpose of "having the administrative agency with expertise in these matters decide them in the first instance" is "frustrated if the HLRB's jurisdiction can be defeated by characterizing issues that fall within the scope of HRS Chapter 89 as constitutional claims and then addressing them directly to the circuit court." *Id.* Likewise, even though HSTA has not brought a chapter 89 claim against Lingle, the legislative purpose of providing the HLRB with exclusive original jurisdiction over chapter 89 complaints is frustrated if plaintiffs can recast their statutory claims as constitutional claims and proceed directly to circuit court. Thus, the circuit court erred by failing to allow the HLRB to decide the issues relating to chapter 89 before deciding the constitutional issues.

The plaintiffs also assert that the case did not need to proceed before the HLRB because this case involved a "fiscal crisis" and an "urgent need for resolution" of an issue

9. For the same reason, the plaintiffs' argument that "the HLRB's original jurisdiction is limited to resolving controversies concerning prohibited practices" and that a circuit court "has jurisdiction to interpret Chapter 89 in the first instance when statutory interpretation is necessary to resolve a claim within the Circuit Court's jurisdic-

tion" is unpersuasive. The plaintiffs' argument is correct in controversies that do not concern prohibited practices; however, the instant case is a controversy concerning a *prohibited practice* over which the HLRB has exclusive original jurisdiction.

"affecting all State employees." However, that argument was rejected in *HGEA*. *HGEA*, 124 Hawai'i at 209, 239 P.3d at 13 ("HGEA does not cite to any authority that supports its position that, essentially, 'exigent circumstances' justified the circuit court in proceeding directly to the constitutional issues without first allowing the HLRB to rule on the statutory questions.").[10] Therefore, the HLRB had exclusive original jurisdiction over the dispute.

## IV. CONCLUSION

For the foregoing reasons, we vacate the circuit court's September 24, 2009 amended judgment and remand for further proceedings consistent with this opinion.

### Dissenting Opinion by ACOBA, J.

I would hold, as opposed to the majority, that (1) the constitutional question of whether the actions of then-Governor Linda Lingle (Governor Lingle)[1] in unilaterally imposing work-furloughs violated collective bargaining rights under article XIII, section 2 of the Hawai'i Constitution,[2] must be decided first by the circuit court of the first circuit (the court), and (2) the court, thus, properly exercised its jurisdiction in this case inasmuch as the complaint of Petitioners, on its face, raised only a violation of article XIII, section 2, and sought injunctive relief against the imposition of furloughs, matters over which the court had jurisdiction and the Hawai'i Labor Relations Board (HLRB) did not. In

my view, then, the court was correct in exercising jurisdiction over the complaint rather than deferring to the HLRB.

### I.

The foreseeable consequence of the majority's holding today is to require the parties[3] to engage in proceedings before the HLRB that could be a nullity if Governor Lingle's actions were declared unconstitutional or could be unnecessary if her actions are declared constitutional. If the court determined that Governor Lingle's actions were unconstitutional, then the decision of the HLRB would have been inconsequential. For if Governor Lingle's actions "were unconstitutional, then all other issues, including any prohibited practice claims, are subsumed in that determination[.]" *see Hawai'i Gov't Emp's Ass'n, AFSCME Local 152 v. Lingle (HGEA)*, 124 Hawai'i 197, 227, 239 P.3d 1, 31 (2010) (Acoba, J., dissenting). The HLRB's decision then would be reversed. The course chosen by the majority invites the possibility of unnecessary delay and a waste of judicial and party resources.

Such a possibility has been avoided in the past because this court wisely asserted jurisdiction over article XIII, section 2 claims without requiring the parties to first submit statutory claims to the HLRB. *See Malahoff v. Saito*, 111 Hawai'i 168, 181, 140 P.3d 401, 414 (2006) (considering whether the Governor's and Comptroller's plan to implement a payroll lag under HRS § 78–13[4] violated the

---

10. Similarly, a number of the plaintiffs' other arguments were rejected in *HGEA*. For instance, the plaintiffs assert that: (1) exhaustion of administrative remedies does not apply because proceedings in the circuit court would have been necessary to obtain a temporary restraining order, *see* HRS § 377–9(d) (1993); and (2) the HLRB does not have jurisdiction to resolve the plaintiffs' constitutional claims. In *HGEA*, this court rejected those arguments. *See HGEA*, 124 Hawai'i at 208–09, 239 P.3d at 12–13.

1. Neil Abercrombie, Governor of the State of Hawai'i, succeeded Governor Linda Lingle. Although Governor Abercrombie has been substituted for Governor Lingle in this action, the opinion herein refers to Governor Lingle inasmuch as her actions are at issue.

2. Article XIII, section 2 of the Hawai'i Constitution provides that "[p]ersons in public employ-

ment shall have the right to organize for the purpose of collective bargaining as provided by law."

3. Respondents include Neil Abercrombie, Governor, State of Hawai'i, Sunshine P.W. Topping, Director, Department of Human Resources Development, State of Hawai'i, and Kalbert K. Young, Director, Department of Budget and Finance, State of Hawai'i. Neil Abercrombie, Sunshine P.W. Topping and Kalbert K. Young were all substituted as parties to this action pursuant to Hawai'i Rules of Appellate Procedure Rule 43(c).

4. HRS § 78–13 provides in pertinent part that "[u]nless otherwise provided by law, all officers and employees shall be paid at least semimonthly except that substitute teachers, part-time hourly rated teachers of adult and evening classes, and

constitutional right to organize for collective bargaining under article XIII, section 2 of the Hawai'i Constitution); *United Pub. Workers, AFSCME, Local 646 v. Yogi*, 101 Hawai'i 46, 47, 62 P.3d 189, 190 (2002) (deciding whether a statute that prohibited employees and unions from collectively bargaining over cost items for two years violated the employees' right to organize for the purpose of collective bargaining under article XIII, section 2 of the Hawai'i Constitution); *see also HGEA*, 124 Hawai'i at 218–21, 239 P.3d at 22–25 (Acoba, J., dissenting). Thus, a collateral consequence of the majority's decision is that it ignores the precedent of this court. Accordingly, I must respectfully disagree that the instant case must be presented first to the HLRB.

## II.

The majority reaches its holding by re-characterizing Petitioners' complaint [5] as asserting claims under Chapter 89 of the HRS. However, *no* such claims were raised or referenced in their complaint. In their complaint, Petitioners alleged that Governor Lingle's actions violated article XIII, Section 2 of the Hawai'i Constitution, an issue over which the court had sole and exclusive jurisdiction.[6]

In Count I of their complaint, Petitioners allege a violation of article XIII, Section 2 of the Hawai'i Constitution. Petitioners allege the violation resulted in (1) "a unilateral reduction of *wages and cost items* ... for all state employees[,]" (2) "a prohibition on negotiations regarding a three-day furlough for two years *which affects their wages, hours, and other terms and conditions of employment* which are core subjects of collective bargaining as determined in *Yogi*," and a "unilateral suspension for two years of the

collective bargaining process as provided by law." (Emphases added.) To that end, Petitioners sought a "declaratory order and judgment" that the furlough "decision and actions by [Respondents] ... constitutes a violation of ... Article XIII, Section 2 ... of the Hawai'i State Constitution."

Article XIII, section 2 grants persons in public employment "the right to organize for the purpose of collective bargaining as provided by law." The phrase "collective bargaining as provided by law" has been construed by this court as "the ability to engage in negotiations concerning core subjects such as wages, hours, and other conditions of employment." *Yogi*, 101 Hawai'i at 53, 62 P.3d at 196; *see also Malahoff*, 111 Hawai'i at 188, 140 P.3d at 421 (recognizing that "implicit within article XIII, section 2 is the right to collectively bargain over wages, hours, and other terms and conditions of employment") (internal quotation marks and citations omitted). It is clear that Petitioners alleged a violation of a constitutional "right to organize for the purpose of collective bargaining as provided by law[,]" as defined by *Yogi* and *Malahoff*. Thus, Petitioners properly pled a claim under article XIII, section 2 of the Hawai'i Constitution.

## III.

The HLRB should not decide claims arising under Chapter 89 of the HRS before the court considers Petitioners' constitutional claim. The majority essentially holds that Petitioners were required to exhaust administrative remedies before the court could decide Petitioners' claims under article XIII, section 2 of the Hawai'i Constitution. But this court has said that "[t]he requirement that a party exhaust [its] administrative remedies 'comes into play where a claim is cogni-

other part-time, intermittent, or casual employees may be paid once a month[.]"

5. HSTA filed an original complaint, listing itself as the sole plaintiff, on June 16, 2009. On June 18, 2009, HSTA filed a first amended complaint, listing itself and UPW as the plaintiffs. For purposes of this opinion, the first amended complaint is referred to as the complaint.

6. In addition to claims arising article XIII, section 2 of the Hawai'i Constitution, Petitioners

also alleged that (1) the reduction of accrued retirement benefits violated article XVI, section 2, which provides that "accrued [retirement] benefits shall not be diminished[,]" and (2) the actions of Respondents usurped the authority of the legislature in violation of Article III, section 1, which provides that "[t]he legislative power of the State shall be vested in a legislature." Inasmuch as the majority's disposition relies upon Petitioners' article XIII, section 2 claim, Petitioners' other constitutional claims are not discussed.

zable in the first instance by an administrative agency *alone* [.]'" *Hawaii Insurers Council v. Lingle,* 120 Hawai'i 51, 71–72, 201 P.3d 564, 584–85 (2008) (quoting *Aged Hawaiians v. Hawaiian Homes Comm'n,* 78 Hawai'i 192, 202 n. 18, 891 P.2d 279, 289 n. 18 (1995) (quoting *Kona Old Hawaiian Trails Group v. Lyman,* 69 Haw. 81, 93, 734 P.2d 161, 168 (1987))) (emphasis added). Moreover, "*an aggrieved party need not exhaust administrative remedies where no effective remedies exist.*'" *Id.* (quoting *In re Doe Children,* 105 Hawai'i 38, 59, 93 P.3d 1145, 1166 (2004)) (emphasis added). In the instant case, the constitutional claim is not cognizable by the HLRB and accordingly, "there were no remedies for [Petitioners'] constitutional claim under [Chapter 89 of the HRS.]" *Id.* Therefore, even if Petitioners initially brought this case before the HLRB, the HLRB "would have been powerless to declare [Lingle's actions] ... unconstitutional" and afford Petitioners relief. *Id.* Inasmuch as the HLRB could not provide a remedy with respect to Petitioners' claim under article XIII, section 2 of the Hawai'i Constitution, Petitioners could not have failed to exhaust administrative remedies.

Moreover, it is beyond dispute that only the courts have jurisdiction over the question presented in Petitioners' complaint—whether Governor Lingle's acts violated article XIII, section 2 of the Hawai'i Constitution. *See HOH Corp. v. Motor Vehicle Indus. Licensing Bd.,* 69 Haw. 135, 142, 736 P.2d 1271, 1275 (1987) ("The 'delicate and difficult office [of ascertaining] whether ... legislation is in accordance with, or in contravention of, [constitutional] provisions' is confided to the courts" (quoting *United States v. Butler,* 297 U.S. 1, 63, 56 S.Ct. 312, 80 L.Ed. 477 (1936)) (ellipsis and brackets in original)). It is equally unquestioned that an administrative agency lacks the power to address the constitutional issue presented in this case. *Id.* ("Although an administrative agency may always determine questions about its own jurisdiction it generally lacks power to pass upon constitutionality of a statute.") (Internal quotation marks, brackets, and citation omitted.) Even the HLRB acknowledges this well-established doctrine. *See In re UPW, AFCSME, Local 646, and Lum, et al.,*

Case No. CE–01–634 (Dec. No. 471) ("With regard to constitutionality, as an administrative agency the Board is without jurisdiction to address such questions."). This is because, "[a]n administrative agency can only wield powers expressly or implicitly granted to it by statute." *Morgan v. Planning Dep't., County of Kauai,* 104 Hawai'i 173, 184, 86 P.3d 982, 993 (2004) (internal quotation marks and citation omitted). In light of the foregoing, the court properly considered Petitioners' constitutional claim before any referral to the HLRB.

## IV.

The majority unilaterally infers that because Petitioners allege in their complaint "that [Governor] Lingle violated Article XIII, Section 2 of the Hawai'i Constitution by imposing a unilateral reduction in wages, prohibiting negotiations regarding the furloughs, and by unilaterally suspending the 'collective bargaining process as provided by law[,]'" Petitioners' "complaint states claims relating to 'prohibited practices,'" over which the HLRB has exclusive original jurisdiction. Majority opinion at 617. A prohibited practice is defined, among other things, as:

(5) Refus[ing] to bargain collectively in good faith with the exclusive representative as required in section 89–9;

(6) Refus[ing] to participate in good faith in the mediation and arbitration procedures set forth in section 89–11;

(7) Refus[ing] or fail[ing] to comply with any provision of [chapter 89 of the HRS];

(8) Violat[ing] the terms of a collective bargaining agreement[.]

HRS § 89–13. But, as noted, Petitioners did not raise any statutory claims and the majority in fact acknowledges this. Majority opinion at 616 (stating that Petitioners "in the instant case did not raise statutory issues in their complaint"). The majority's approach is problematic for another reason.

Inasmuch as Petitioners did not raise any statutory claim under Chapter 89 of the HRS, it is unclear what the HLRB would decide with respect to "prohibited practices,"

326

on the referral proposed by the majority. The majority does not identify any factual allegations in Petitioners' complaint that "relat[e] to" "prohibited practices" that must first be decided by the HLRB. Majority opinion at 617. If it were to do so, the majority would be advancing arguments not made by Petitioners. While this court may "decide the legal limits within which the parties may act," the "choices they should make within those limits and what would be in their best interest to effectuate once the law is applied, is prudently and lawfully committed to them." *County of Kaua'i ex rel. Nakazawa v. Baptiste,* 115 Hawai'i 15, 60, 165 P.3d 916, 927, 961 (2007) (Acoba, J., dissenting, joined by Duffy, J.). With all due respect, it is legally inconceivable that the majority could direct that Petitioners present claims before the HLRB not raised in their complaint.

## V.

Finally, *HGEA* plainly does not support the majority's conclusion that Petitioners' article XIII, Section 2 claim must be construed as a claim grounded in Chapter 89 of the HRS. In *HGEA*, the majority "read HGEA's ... complaint as raising ... *two* pertinent issues: (1) whether Governor Lingle's furlough plan constitutes 'a mandatory subject of collective bargaining negotiation protected by article XIII, Section 2 of the Hawaii State Constitution[,]' and (2) whether the furlough constitutes 'a mandatory subject of collective bargaining negotiation ... as prescribed by HRS § 89–9(a).'" *HGEA,* 124 Hawai'i at 207, 239 P.3d at 11 (emphasis in original). The *HGEA* majority went on to conclude that the HLRB "had 'exclusive original jurisdiction' over the statutory issues raised by HGEA, and that the circuit court should have deferred ruling on the constitutional issues until after the HLRB had the opportunity to resolve the statutory questions." *Id.* at 200, 239 P.3d at 4. In other words, *HGEA* holds that where a plaintiff does challenge an alleged practice as a violation of both Chapter 89 of the HRS *and* the constitution, the statutory claim must be addressed by the HLRB before the court can address the constitutional question.

In contrast, in this case, Petitioners raised only one of the "two" separate "issues" raised in *HGEA*—the issue over which the court, not the HLRB, has jurisdiction. *Id.* at 207, 239 P.3d at 11. In light of *HGEA*'s acknowledgment of claims grounded in Chapter 89 of the HRS and claims grounded in article XIII, section 2 of the Hawai'i Constitution as separate and distinct from each other, the majority's reliance on that case is unwarranted.

## VI.

For the reasons set forth herein, I respectfully dissent.