**Electronically Filed
Supreme Court
30052
17-JAN-2012
03:47 PM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---oOo---

HAWAII STATE TEACHERS ASSOCIATION and UNITED PUBLIC WORKERS,
AFSCME, Local 646, AFL-CIO,
Plaintiffs-Appellants/Appellees/Cross-Appellants,

vs.

NEIL ABERCROMBIE[1], Governor, State of Hawai'i; BARBARA A. KRIEG[2],
Interim Director, Department of Human Resources Development,
State of Hawai'i; and KALBERT K. YOUNG, Director, Department of
Budget and Finance, State of Hawai'i; Doe Defendants 1-10,
Defendants-Appellees/Appellants/Cross-Appellees.

NO. 30052

APPEAL FROM THE FIRST CIRCUIT COURT
(CIV. NO. 09-1-1372)

JANUARY 17, 2012

NAKAYAMA, ACTING C.J., AND DUFFY, J.,
CIRCUIT JUDGE AHN IN PLACE OF MOON, C.J., RECUSED AND RETIRED,
AND CIRCUIT JUDGE LEE, IN PLACE OF RECKTENWALD J., RECUSED,
WITH ACOBA, J., DISSENTING SEPARATELY

---

[1]     During the pendency of this appeal, Neil Abercrombie, Governor of the State of Hawai'i, succeeded Linda Lingle.  Thus, pursuant to Hawai'i Rules of Appellate Procedure (HRAP) Rule 43(c), Abercrombie has been substituted automatically for Lingle in this case.

[2]     Barbara A. Krieg, Interim Director of the Department of Human Resources Development, State of Hawai'i and Kalbert K. Young, Director, Department of Budget and Finance, State of Hawai'i have been substituted as parties to this appeal pursuant to HRAP 43(c).

OPINION OF THE COURT BY NAKAYAMA, J.

In this case, we apply Hawaii Government Employees Ass'n, AFSCME Local 152, AFL-CIO v. Lingle (hereinafter "HGEA"), 124 Hawaiʻi 197, 239 P.3d 1 (2010), and hold that the circuit court erred by deciding statutory issues over which the Hawaiʻi Labor Relations Board ("HLRB") has exclusive original jurisdiction.

## I.  BACKGROUND

Briefly stated, in order to reduce labor costs, then-Governor Linda Lingle ("Lingle") announced her decision to furlough[3] all state employees for three days per month and to restrict spending in the Department of Education ("DOE") and University of Hawaiʻi ("University") in an equal amount.  She later filed executive order 09-02, which unilaterally imposed the three-day-per-month furloughs and reduced the DOE's and the University's funding accordingly.  In response to executive order 09-02, Hawaiʻi State Teachers Association and United Public Workers, AFSCME, Local 646, AFL-CIO (collectively, "plaintiffs") brought the instant action, alleging that the furlough plan violated:  (1) the right to organize for the purpose of collective bargaining under article XIII, section 2 of the

---

[3]    Executive order 09-02 defined the term "furlough" as "the placement of an employee temporarily and involuntarily in a non-pay and non-duty status by the Employer because of lack of work or funds, or other non-disciplinary reasons."

Hawaiʻi Constitution;[4] (2) the employees' right to accrued retirement benefits under article XVI, section 2 of the Hawaiʻi Constitution;[5] and (3) separation of powers under article III, section 1 of the Hawaiʻi Constitution.[6] The plaintiffs moved for a temporary restraining order, which the Circuit Court of the First Circuit ("circuit court") granted in part on August 28, 2009. Lingle asserted in part that the HLRB had exclusive jurisdiction over the plaintiffs' claims under chapter 89 of the Hawaiʻi Revised Statutes (HRS). The circuit court rejected this argument. The circuit court issued its First Amended Findings of Fact and Conclusions of Law on August 28, 2009, which made the following relevant determinations: (1) the plaintiffs were likely to succeed on their article XIII, section 2 claim because Lingle's furlough order concerned a "core subject of collective bargaining"; (2) under the unilateral change doctrine, "the employer cannot implement unilateral changes regarding matters that are mandatory subjects of bargaining . . ."; (3) the HLRB

---

[4] Article XIII, section 2 of the Hawaiʻi Constitution provides that "[p]ersons in public employment shall have the right to organize for the purpose of collective bargaining as provided by law."

[5] Article XVI, section 2 of the Hawaiʻi Constitution provides that "[m]embership in any employees' retirement system of the State or any political subdivision thereof shall be a contractual relationship, the accrued benefits of which shall not be diminished or impaired."

[6] Article III, section 1 of the Hawaiʻi Constitution provides that the "legislative power of the State shall be vested in a legislature, which shall consist of two houses, a senate and a house of representatives. Such power shall extend to all rightful subjects of legislation not inconsistent with this constitution or the Constitution of the United States."

did not have exclusive jurisdiction over the plaintiff's claims; (4) United Public Workers, AFSCME, Local 646, AFL-CIO v. Hanneman, 106 Hawaiʻi 359, 105 P.3d 236 (2005), is inapposite; and (5) the management rights enumerated in HRS § 89-9(d) (Supp. 2008) did not allow Lingle's unilateral imposition of the furloughs. The circuit court filed its final judgment on September 10, 2009. The circuit court subsequently filed an amended judgment on September 24, 2009.

The plaintiffs appealed on September 10, 2009, asserting that the circuit court erred by: (1) determining "that HRS § 37-37(a) [wa]s a constitutional delegation of budget-reduction authority to the Governor"; and (2) "dismissing Count III of the First Amended Complaint sua sponte, without providing [the plaintiffs] with an opportunity to respond."[7] Lingle cross-appealed, asserting in part that the circuit court lacked jurisdiction to determine whether the furlough plan complied with HRS § 89-9(d).

The plaintiffs applied for transfer from the Intermediate Court of Appeals ("ICA") to this court of their appeal and Lingle's cross-appeal. On December 1, 2009, this court entered an order granting the plaintiffs' application for transfer pursuant to HRS § 602-58(a)(1) (Supp. 2008).

---

[7] In light of our conclusion that the circuit court lacked subject matter jurisdiction, it is unnecessary to address these issues.

## II.  STANDARDS OF REVIEW

### A.  Subject Matter Jurisdiction

"Whether a court possesses subject matter jurisdiction is a question of law reviewable de novo."  HGEA, 124 Hawai'i at 201, 239 P.3d at 5 (internal quotation marks omitted) (quoting Hawaii Mgmt. Alliance Ass'n v. Ins. Comm'r, 106 Hawai'i 21, 27, 100 P.3d 952, 957 (2004)).

### B.  Statutory Interpretation

Questions of statutory interpretation are questions of law reviewable de novo.  Id.  This court follows the following principles when interpreting statutes:

> First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. And fifth, in construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning.

Id. at 202, 239 P.3d at 6.

## III.  DISCUSSION

The circuit court determined that it had subject matter jurisdiction over the dispute.  The circuit court further determined that the management rights enumerated in HRS § 89-9(d) did not allow Lingle to unilaterally furlough employees.

Lingle asserts that the circuit court erred because it did not have subject matter jurisdiction over the dispute.  In response, the plaintiffs assert that:  (1) the doctrines of exhaustion of administrative remedies and primary jurisdiction are matters of policy; and (2) the unique circumstances of this case weigh against requiring the case to proceed before the HLRB.

In HGEA, 124 Hawaiʻi at 200, 239 P.3d at 4, this court held that the HLRB had "exclusive original jurisdiction" over the HRS chapter 89 issues raised by the plaintiffs and that "the circuit court should have deferred ruling on the constitutional issues until after the HLRB had the opportunity to resolve the statutory questions."  In HGEA, the plaintiffs asserted in their complaint that "'[t]he Governor does not have the implied right to unilaterally impose furloughs pursuant to HRS § 89-9(d)' thereby 'circumvent[ing] the collective bargaining process' because '[f]urloughs reduce employee hours and wages and affect terms and conditions of employment and, therefore, are a mandatory subject of collective bargaining negotiation protected by Article XIII, Section 2 of the Hawaii State Constitution and as prescribed by HRS § 89-9(a).'"  Id. at 205, 239 P.3d at 9 (emphases added).  The plaintiffs in this case did not make similar allegations with respect to their article XIII, section 2

6

claim.[8]  Because the plaintiffs in the instant case did not raise statutory issues in their complaint, this case presents the question of whether the reasoning in HGEA applies when the plaintiffs raise constitutional issues while omitting references to statutory issues the HLRB has exclusive jurisdiction over.  We hold that it does, and therefore vacate the circuit court's judgment and remand to the circuit court.

In HGEA, HGEA based its request for relief on both statutory and constitutional grounds.  HGEA, 124 Hawai'i at 200, 239 P.3d at 4.  The circuit court granted a preliminary injunction partly on the grounds that:  (1) the HLRB did not have exclusive jurisdiction over the dispute; (2) Lingle's decision to unilaterally furlough employees violated article XIII, section 2 of the Hawai'i Constitution; (3) under NLRB v. Katz, 369 U.S. 736 (1962), Lingle could not impose furloughs by unilateral action; (4) United Public Workers, AFSCME, Local 646, AFL-CIO v. Hanneman, 106 Hawai'i 359, 105 P.3d 236 (2005), is "inapposite"; and (5) Lingle's reliance on HRS § 89-9(d) to justify the furloughs was not persuasive.  HGEA, 124 Hawai'i at 201, 239 P.3d at 5.  This court held that HRS § 89-14 (1993) provided the HLRB

---

[8]    The plaintiffs did assert that the "obligation to pay wages and salaries to bargaining units 1, 5 and 10, on and after June 1, 2009 and to maintain hours of work and other terms and conditions of employment are valid obligations and commitments previously incurred: . . . [b]y statute under chapter 89 which prohibits any unilateral changes in wages, hours of work, and other terms and conditions of employment absent good faith bargaining leading to impasse (which has yet to occur)."  However, this assertion occurred in the context of their claim regarding separation of powers.

with exclusive original jurisdiction over the dispute.

HRS § 89-14 provides that "[a]ny controversy concerning prohibited practices may be submitted to the board in the same manner and with the same effect as provided in section 377-9; <u>provided that the board shall have exclusive original jurisdiction over such a controversy . . . .</u>"  (Emphasis added.) This court observed that HRS § 89-13(a) defines the term prohibited practice as follows:

> It shall be a prohibited practice for a public employer or its designated representative wilfully to:
>
> . . . .
>
> (5) Refuse to bargain collectively in good faith with the exclusive representative as required in section 89-9;
>
> (6) Refuse to participate in good faith in the mediation and arbitration procedures set forth in section 89-11;
>
> (7) Refuse or fail to comply with any provision of this chapter;
>
> (8) Violate the terms of a collective bargaining agreement.

<u>HGEA</u>, 124 Hawaiʻi at 204, 239 P.3d at 8 (quoting HRS § 89-13(a) (Supp. 2003)).

This court held that "[v]iewing the assertions made by HGEA in its first amended complaint in light of HRS § 89-13(a), it appears that HGEA alleges that Lingle essentially engaged in a 'prohibited practice' when she unilaterally imposed furloughs." <u>Id.</u> at 205, 239 P.3d at 9.  Therefore, this court held that "the HLRB has exclusive original jurisdiction over the statutory claims raised in HGEA's complaint." <u>Id.</u> at 206, 239 P.3d at 10.

Unlike the plaintiffs in HGEA, the plaintiffs here have not referred to HRS chapter 89 in their complaint when arguing that the imposition of furloughs violated article XIII, section 2 of the Hawai'i Constitution. Nevertheless, HGEA applies. This is apparent from the text of HRS § 89-14 and the policies enumerated in HGEA.

The plain language of HRS § 89-14 supports concluding that the instant case is a "controversy concerning prohibited practices" that must first be submitted to the HLRB. Although the term "controversy concerning prohibited practices" is not defined by chapter 89, this court "may resort to legal or other well accepted dictionaries as one way to determine the ordinary meaning of certain terms not statutorily defined." Nuuanu Valley Ass'n v. City & Cnty. of Honolulu, 119 Hawai'i 90, 98, 194 P.3d 531, 539 (2008) (internal quotation marks omitted) (quoting Leslie v. Bd. of Appeals, 109 Hawai'i 384, 393, 126 P.3d 1071, 1080 (2006)). The term "concerning" is defined as "relating to." Webster's Unabridged Dictionary 423 (2d ed. 2001). The term "prohibited practice" is defined in HRS § 89-13 in part as "[r]efus[ing] to bargain collectively in good faith with the exclusive representative as required in section 89-9[,]" "[r]efus[ing] to participate in good faith in the mediation and arbitration procedures set forth in section 89-11[,]" refusing to comply with any provision of chapter 89, and "[v]iolat[ing] the

9

terms of a collective bargaining agreement."  HRS § 89-13(a)(5)-(8).  The plaintiffs' first amended complaint asserts that Lingle violated article XIII, section 2 of the Hawaiʻi Constitution by imposing a unilateral reduction in wages, prohibiting negotiations regarding the furloughs, and by unilaterally suspending the "collective bargaining process as provided by law" for two years.  The plaintiffs' complaint states claims relating to "prohibited practices" because it ultimately challenges Lingle's ability to unilaterally impose furloughs without collectively bargaining.  See HGEA, 124 Hawaiʻi at 205, 239 P.3d at 9 (holding that "HGEA alleges that Lingle essentially engaged in a 'prohibited practice' when she unilaterally imposed furloughs[,]" because HGEA asserted that "[t]he Governor does not have the implied right to unilaterally impose furloughs pursuant to HRS § 89-9(d)" thereby "circumvent[ing] the collective bargaining process . . .").  Deleting references to chapter 89 does not change the fact that the dispute ultimately relates to a prohibited practice.  Therefore, the plain language of HRS § 89-14 indicates that the HLRB has exclusive original jurisdiction over the plaintiffs' claims.[9]

---

[9]     For the same reason, the plaintiffs' argument that "the HLRB's original jurisdiction is limited to resolving controversies concerning prohibited practices" and that a circuit court "has jurisdiction to interpret Chapter 89 in the first instance when statutory interpretation is necessary to resolve a claim within the Circuit Court's jurisdiction" is unpersuasive.  The plaintiffs' argument is correct in controversies that do not concern prohibited practices; however, the instant case is a controversy concerning a prohibited practice over which the HLRB has exclusive original jurisdiction.

This analysis is bolstered by this court's opinion in HGEA, where we rejected the plaintiffs' attempt to characterize their statutory claim as a constitutional claim. HGEA, 124 Hawaiʻi at 208, 239 P.3d at 12. This court held that the legislative purpose of "having the administrative agency with expertise in these matters decide them in the first instance" is "frustrated if the HLRB's jurisdiction can be defeated by characterizing issues that fall within the scope of HRS Chapter 89 as constitutional claims and then addressing them directly to the circuit court." Id. Likewise, even though HSTA has not brought a chapter 89 claim against Lingle, the legislative purpose of providing the HLRB with exclusive original jurisdiction over chapter 89 complaints is frustrated if plaintiffs can recast their statutory claims as constitutional claims and proceed directly to circuit court. Thus, the circuit court erred by failing allow the HLRB to decide the issues relating to chapter 89 before deciding the constitutional issues.

The plaintiffs also assert that the case did not need to proceed before the HLRB because this case involved a "fiscal crisis" and an "urgent need for resolution" of an issue "affecting all State employees." However, that argument was rejected in HGEA. HGEA, 124 Hawaiʻi at 209, 239 P.3d at 13 ("HGEA does not cite to any authority that supports its position that, essentially, 'exigent circumstances' justified the circuit

court in proceeding directly to the constitutional issues without first allowing the HLRB to rule on the statutory questions.").[10] Therefore, the HLRB had exclusive original jurisdiction over the dispute.

## IV.  CONCLUSION

For the foregoing reasons, we vacate the circuit court's September 24, 2009 amended judgment and remand for further proceedings consistent with this opinion.

On the briefs:

Deirdre Marie-Iha,
Deputy Solicitor General,
Department of the Attorney
General (Mark J. Bennett,
Attorney General of Hawaiʻi,
Lisa M. Ginoza, First Deputy
Attorney General of Hawaii,
with her on the briefs) for
Defendants-Appellees/
Appellants/Cross-Appellees

Rebecca L. Covert,
(Herbert R. Takahashi and
Danny J. Vasconcellos of
Takahashi Vasconcellos &
Covert and Scott A. Kronland,
pro hac vice, of Altshuler
Berzon LLP with her on the
briefs) for Plaintiffs-
Appellants/Appellees/
Cross-Appellants

/s/ Paula A. Nakayama

/s/ James E. Duffy, Jr.

/s/ Karen S. S. Ahn

/s/ Randal K. O. Lee



---

[10]     Similarly, a number of the plaintiffs' other arguments were rejected in HGEA.  For instance, the plaintiffs assert that:  (1) exhaustion of administrative remedies does not apply because proceedings in the circuit court would have been necessary to obtain a temporary restraining order, see HRS § 377-9(d) (1993); and (2) the HLRB does not have jurisdiction to resolve the plaintiffs' constitutional claims.  In HGEA, this court rejected those arguments.  See HGEA, 124 Hawaiʻi at 208-09, 239 P.3d at 12-13.