**Electronically Filed
Supreme Court
SCWC-30286
27-MAY-2015
09:41 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

_____

GARY W. RODRIGUES,
Petitioner/Plaintiff-Appellant,

vs.

UNITED PUBLIC WORKERS, AFSCME LOCAL 646, AFL-CIO,
Respondent/Defendant-Appellee.

_____

SCWC-30286

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(ICA NO. 30286; CIV. NO. 08-1-2538)

MAY 27, 2015

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY WILSON, J.

## I.  Introduction

Petitioner Gary Rodrigues (Rodrigues) is the former

State Director of United Public Workers, AFSCME Local 646, AFL-

1

CIO (UPW) and a former administrator of UPW's Mutual Aid Fund trust (MAF), an employee benefit plan established to provide hospital and related benefits to UPW members and their families.

In 1998, Rodrigues, as the MAF's plan administrator, made six loans totaling $1.1 million to Best Rescue Systems, Inc. (Best Rescue) a startup company located in Florida. Best Rescue never repaid the loans and in October 2003, the MAF filed a complaint in the United States District Court for the District of Hawaiʻi (federal district court) alleging, inter alia, that Rodrigues was negligent in making the loans and had thus breached his fiduciary duties as plan administrator to the MAF.

The federal district court[1] found that the MAF is an Employee Retirement Income Security Act (ERISA) plan under 29 U.S.C. § 1002(1) and that Rodrigues breached his fiduciary duties to the MAF. DeCosta v. Rodrigues, Civ. No. 03-00598 DAE-LEK, 2008 WL 1815716, at *6, *12 (D. Haw. Mar. 20, 2008), aff'd sub nom. De Costa v. Rodrigues, 334 F. App'x 807 (9th Cir. 2009). The federal district court held Rodrigues liable for making imprudent investments under ERISA and entered judgment against him for five of the six failed loans in the amount of $850,000. Id. at *14.

---

[1] The Honorable David Alan Ezra presided.

In 2008, Rodrigues filed a complaint in the Circuit Court of the First Circuit (circuit court) seeking that UPW indemnify him for the $850,000 plus attorneys' fees and costs incurred in defending the federal lawsuit on the grounds that his liability to the MAF arose from actions he took solely in his capacity as agent for UPW and/or that UPW ratified his actions. UPW responded that Rodrigues was not entitled to indemnification because he was negligent in making the loans, and his indemnification claims were preempted by ERISA. The circuit court agreed with UPW and granted summary judgment in favor of UPW.

Rodrigues appealed to the Intermediate Court of Appeals (ICA) arguing that his state indemnification claims were not preempted under ERISA's "implied conflict" doctrine because they did not "duplicate, supplement, or supplant" remedies provided by ERISA's civil enforcement scheme. The ICA held that ERISA did not preempt Rodrigues' indemnification claims but affirmed the circuit court, stating that "[b]ecause Rodrigues is responsible for his own conduct, he is not entitled to be indemnified for his negligent acts as a matter of law." Rodrigues v. United Public Workers, No. 30286, 2014 WL 983024, at *12 (App. Mar. 13, 2014).

Rodrigues' state indemnity claim derives from the

federal district court's conclusion that Rodrigues breached his fiduciary duties to the MAF Plan, an employee benefit plan under ERISA. Thus, we must enter the "ERISA preemption thicket" to determine whether Rodrigues' state law claim survives preemption. Gonzales v. Prudential Ins. Co. of Am., 901 F.2d 446, 451-52 (5th Cir. 1990) ("Obviously, any court forced to enter the ERISA preemption thicket sets out on a treacherous path."), superseded by statute on other grounds as recognized in Guidry v. Nw. Mut. Life Ins. Co., 88 F. App'x 12, 13-14 (5th Cir. 2004).

Rodrigues requested certiorari on the ground that the ICA erred in concluding that his negligence defeats his indemnification claim as a matter of law. We do not reach this issue because we hold that ERISA preemption, not his negligence, defeats Rodrigues' state indemnity claims against UPW as a matter of law.

## II. Background

### A. Facts

Rodrigues was the State Director of UPW from 1981 until 2002. UPW is a labor union representing government employees as well as those who work in the private sector. In July of 1984, UPW established the MAF. More than 10,000 persons participate in the MAF. The MAF is funded entirely by

4

contributions from UPW members, UPW employees, and its dependents; employers do not contribute to the MAF.  A majority of employee participants are employed by the government.  Although the MAF is a 501(c)(9) trust and is a separate legal entity from UPW, the MAF's Board of Trustees (Board) includes the President, Secretary-Treasurer, and the Vice Presidents of five UPW divisions: Private Sector, Oʻahu, Maui, Kauaʻi, and the Big Island.  As State Director, Rodrigues was not a member of the Board; however, under the terms of the "Administrative Services Agreement" entered between UPW and the MAF Board, UPW agreed to "[r]eceive, collect, hold, invest and disburse all money payable to or by the [MAF]" through its State Director acting on behalf of UPW.

Beginning in 1998, Rodrigues acted as the MAF plan administrator to make six loans totaling $1.1 million to Best Rescue, a startup company located in Florida.  Best Rescue never returned the money.  On October 31, 2003, the MAF filed a complaint in federal district court, seeking recovery from Rodrigues for all of the MAF's losses resulting from its investments in Best Rescue.

B.  **Federal District Court Proceedings**

The MAF alleged the following counts in its federal district court complaint: (1) breach of fiduciary duty in

violation of 29 U.S.C. § 1104(a)(1)(A);[2] (2) breach of fiduciary

duty by co-fiduciary pursuant to 29 U.S.C. § 1105;[3] and (3)

engaging in prohibited transactions in violation of 29 U.S.C.

§ 1106(a)(1)(D).[4]

---

[2]    29 U.S.C. § 1104(a)(1)(A) (2012) provides:

(a) Prudent man standard of care
        (1) Subject to sections 1103(c) and (d), 1342, and
        1344 of this title, a fiduciary shall discharge his
        duties with respect to a plan solely in the interest
        of the participants and beneficiaries and—
                (A) for the exclusive purpose of:
                        (i) providing benefits to participants
                        and their beneficiaries; and
                        (ii) defraying reasonable expenses of
                        administering the plan[.]

[3]    29 U.S.C. § 1105(a) (2012) states in relevant part:

        [A] fiduciary with respect to a plan shall be liable
for a breach of fiduciary responsibility of another
fiduciary with respect to the same plan in the following
circumstances:
                (1) if he participates knowingly in, or
        knowingly undertakes to conceal, an act or omission
        of such other fiduciary, knowing such act or omission
        is a breach;
                (2) if, by his failure to comply with section
        1104(a)(1) of this title in the administration of his
        specific responsibilities which give rise to his
        status as a fiduciary, he has enabled such other
        fiduciary to commit a breach; or
                (3) if he has knowledge of a breach by such
        other fiduciary, unless he makes reasonable efforts
        under the circumstances to remedy the breach.

[4]    29 U.S.C. § 1106(a)(1)(D) (2012) states in relevant part:

        A fiduciary with respect to a plan shall not cause
the plan to engage in a transaction, if he knows or should
know that such transaction constitutes a direct or
indirect-- . . .
                (D) transfer to, or use by or for the benefit
        of a party in interest, of any assets of the plan
        . . . .

After a three-day bench trial, the federal district court entered its "Findings of Fact and Conclusions of Law." The federal district court first concluded that the MAF is an employee benefit plan governed by ERISA pursuant to 29 U.S.C. § 1002(1),[5] and that it had jurisdiction pursuant to 28 U.S.C. § 1331, which grants the district courts of the United States original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. DeCosta, 2008 WL 1815716, at *6-7.

Second, focusing on Rodrigues' activities rather than his title as UPW's State Director, the court found that the evidence was "sufficient to establish by far more than a preponderance of the evidence that [Rodrigues] exercised discretionary authority and control over the management of the [MAF's] assets" in making the loans to Best Rescue. Id. at *9.

_____

[5]    Pursuant to 29 U.S.C. § 1002(1) (2012):

> The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

7

The court additionally concluded that pursuant to 29 U.S.C.
§ 1104, plaintiffs had demonstrated by a preponderance of the
evidence that Rodrigues "clearly breached his fiduciary duties"
with respect to five of the six loans made to Best Rescue.  Id.
at *11.  Specifically, the federal district court concluded that
a prudent fiduciary would have done more before authorizing and
recommending further investments with Best Rescue after
Rodrigues' first loan to the company.  Id. at *12.  The court
also concluded that the actions of the MAF Board in relation to
the failed investments did not make Rodrigues any less liable
for his own actions.  Id.  The court held that Rodrigues was
liable under ERISA for making imprudent investments and that he
was liable for five of the six failed loans, which totaled
$850,000.  Id. at *14.  The Ninth Circuit Court of Appeals
subsequently affirmed the federal district court's judgment.  De
Costa, 334 F. App'x at 810.

## C.  Hawai'i State Court Proceedings

### 1.  Circuit Court Proceedings

On December 9, 2008, Rodrigues filed a "Complaint for
Indemnity" in the circuit court, alleging that his liability to
the MAF "arose solely from acts and/or omissions" committed by
Rodrigues "in his capacity as agent of Defendant UPW and/or were
authorized and/or ratified by the trustees of the [MAF] and/or

8

Defendant UPW." Rodrigues sought indemnification from UPW in the amount of $850,000 plus attorneys' fees and costs incurred in defending the ERISA breach of fiduciary duties action. UPW filed an answer asserting multiple defenses, including ERISA preemption.

Rodrigues moved the circuit court for partial summary judgment in his favor as to the duty/liability of UPW to indemnify Rodrigues for the loss he suffered in the federal district court proceedings. Rodrigues argued that the underlying actions for which he was held liable under ERISA were within the scope of his performance of duties assigned to him by UPW. Rodrigues thus asserted that UPW was vicariously liable to the MAF for Rodrigues' actions, and also directly liable for its negligence in assigning him as the MAF's administrator. Accordingly, Rodrigues contended that UPW had a duty to indemnify him for the federal district court judgment.

In opposition, UPW argued that Rodrigues had no right of indemnity under ERISA and that ERISA preempted any alleged state law indemnity claim. The circuit court agreed with UPW; it concluded that Rodrigues' indemnity claim was preempted by ERISA and entered summary judgment in favor of UPW.[6]

## 2. ICA Proceedings

---

[6] The Honorable Karl K. Sakamoto presided.

On appeal to the ICA, Rodrigues argued that his action was not preempted under the doctrine of implied conflict preemption because his indemnity claim did not "'duplicate[], supplement[], or supplant[]' remedies provided in ERISA's civil enforcement scheme." He also asserted that his action was not expressly preempted by ERISA's preemption clause. Rodrigues contended that his indemnification claim arose solely from his employment relationship with UPW, which was not an ERISA party in the underlying federal court action. Rodrigues thus argued that his indemnity claim was not preempted by ERISA's express preemption clause because,

> (1) his claims [were] entirely independent of any ERISA duties or obligations; (2) adjudication of these claims [would] not involve the plan's administration and the benefits provided; and (3) adjudication of these claims [would] not encroach on any ERISA relationship or have any impact on any ERISA plan or party.

(Citation omitted).

UPW argued that (1) under ERISA there is no right of indemnity for a breaching fiduciary; (2) Rodrigues' state law indemnity claim was preempted by ERISA; (3) Rodrigues' indemnity claim was premature because he had not suffered a loss; and (4) Rodrigues was an active wrongdoer, and accordingly, Rodrigues should "bear the loss."

The ICA held that ERISA did not preempt Rodrigues' indemnity claim; it reasoned that because Rodrigues' "liability

10

to the plan for breach of his fiduciary duties had already been established," the resolution of his indemnity claims against UPW "[did] not raise questions involving the [MAF's] administration and the benefits provided." Rodrigues, 2014 WL 983024, at *8.

The ICA also explained that Rodrigues' indemnity claim did not supplement ERISA's civil enforcement scheme because his claim was an independent cause of action: "UPW's alleged obligation to indemnify derives not from the plan's 'particular rights and obligations,' but rather, from the alleged duties UPW owed to Rodrigues by virtue of UPW designating Rodrigues as its agent to serve as a plan fiduciary." Id. at *9.

Recognizing, however, that the circuit court did not address whether Rodrigues' negligence was a bar to his indemnity claim because it found the preemption issue dispositive, the ICA entered summary judgment on the alternative ground that his own negligence barred Rodrigues' claim for indemnification.[7] Id. at *10-12.

### III.  Standards of Review

### A.  Motion for Summary Judgment

"We review [a] circuit court's award of summary

---

[7]     The ICA concluded that it could "affirm a judgment of the lower court on any ground in the record that supports affirmance." Id. at *10 (quoting Canalez v. Bob's Appliance Serv. Ctr., Inc., 89 Hawaiʻi 292, 301, 972 P.2d 295, 304 (1999)) (internal quotation mark omitted).

11

judgment de novo under the same standard applied by the circuit court."  Garcia v. Kaiser Found. Hosps., 90 Hawaiʻi 425, 429, 978 P.2d 863, 867 (1999) (alteration in original) (citing Amfac, Inc. v. Waikiki Beachcomber Inv. Co., 74 Haw. 85, 104, 839 P.2d 10, 22 (1992)).  "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Amfac, 74 Haw. at 104, 839 P.2d at 22 (citation omitted) (internal quotation marks omitted).

**B.  ERISA preemption**

Questions of federal preemption under ERISA are questions of law reviewable de novo under the right/wrong standard.  Ditto v. McCurdy, 90 Hawaiʻi 345, 351, 978 P.2d 783, 789 (1999).

### IV.  Discussion

**A.    ERISA**

ERISA is "the product of a decade of congressional study of the Nation's private employee benefit system."  Mertens v. Hewitt Assocs., 508 U.S. 248, 251 (1993) (citing Nachman Corp. v. Pension Benefit Guar. Corp., 446 U.S. 359, 361 (1980)).  It "is a comprehensive statute designed to promote the interests

12

of employees and their beneficiaries in employee benefit plans." Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 90 (1983). Employee benefit plans covered under ERISA include pension plans as well as welfare plans such as the MAF, which provides hospitalization and related benefits for participating UPW employees and members, and their dependents. See Massachusetts v. Morash, 490 U.S. 107, 113 (1989).

ERISA imposes various uniform standards for both pension and welfare plans. Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 137 (1990). As part of this regulatory system, Congress included "one of the broadest preemption clauses ever enacted . . . ." Evans v. Safeco Life Ins. Co., 916 F.2d 1437, 1439 (9th Cir. 1990). The ERISA preemption clause, ERISA § 514(a), codified as 29 U.S.C. § 1144(a), states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." 29 U.S.C. § 1144(a) (2012). "'[S]tate laws' include claims 'based upon common law of general application'" such as Rodrigues' indemnity claim. See Garcia, 90 Hawaiʻi at 431, 978 P.2d at 869 (quoting Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 62 (1987)).

Questions involving this clause are recurrent in state and federal courts. The number of ERISA preemption cases

before the United States Supreme Court reflects the "comprehensive nature of the statute, the centrality of pension and welfare plans in the national economy, and their importance to the financial security of the Nation's work force."  Boggs v. Boggs, 520 U.S. 833, 839 (1997); see also California Div. of Labor Standards Enforcement v. Dillingham Const., N.A. Inc., 519 U.S. 316, 334-35 (1997) (Scalia, J., concurring) ("Since ERISA was enacted in 1974, this Court has accepted certiorari in, and decided, no less than 14 cases to resolve conflicts in the Courts of Appeals regarding ERISA pre-emption of various sorts of state law.  The rate of acceptance, moreover, has not diminished . . . ." (footnote omitted)).

"[D]eveloping a rule to identify whether ERISA" expressly preempts a state law based on the "relate to" language has "bedeviled the Supreme Court" and other federal courts.  See Dishman v. UNUM Life Ins. Co. of Am., 269 F.3d 974, 980 (9th Cir. 2001) (citation omitted) (internal quotation marks omitted); see also Gen. Am. Life Ins. Co. v. Castonguay, 984 F.2d 1518, 1521 (9th Cir. 1993) ("It's far easier to make 'I know it when I see it' decisions in this field than to come up with a general rule, but we must nonetheless try.").  Attempts at construing the "relate to" language have yielded a number of tests.  The Supreme Court has held that a law "relates to" an

14

ERISA plan if it has a reference to or connection with such a plan. Dillingham, 519 U.S. at 324. The Court has concluded that a state law has a forbidden reference where it "acts immediately and exclusively upon ERISA plans" and "where the existence of ERISA plans is essential to the law's operation." Id. at 325; see also District of Columbia v. Greater Washington Bd. of Trade, 506 U.S. 125, 130 (1992) ("Section 2(c)(2) of the [District of Columbia's] Equity Amendment Act specifically refers to welfare benefit plans regulated by ERISA and on that basis alone is pre-empted."); Mackey v. Lanier Collection Agency & Serv., Inc., 486 U.S. 825, 828-30 (1988) (preempting a law that specifically exempted ERISA plans from an otherwise generally applicable garnishment provision).

In construing the "connection with" part of the test, however, the Court recognized that applying this term was no more help than trying to construe the phrase "relate to" in ERISA's preemption clause. New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 656 (1995). The Court opined: "For the same reasons that infinite relations cannot be the measure of pre-emption, neither can infinite connections." Id. Accordingly, the Court held: "We simply must go beyond the unhelpful text and the frustrating difficulty of defining [the preemption clause's] key term, and

15

look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive."  Id.

The Court reiterated Travelers' holding and provided further guidance in De Buono v. NYSA-ILA Medical and Clinical Services Fund, 520 U.S. 806, 813 (1997).  In De Buono, the Court explained that in its "earlier ERISA pre-emption cases, it had not been necessary to rely on the expansive character of ERISA's literal language in order to find pre-emption because the state laws at issue in those cases had a clear connection with or reference to ERISA benefit plans."  De Buono, 520 U.S. at 813 (citation omitted) (internal quotation marks omitted).  The Court explained, however, that "ERISA's 'relates to' language was [not] intended to modify 'the starting presumption that Congress does not intend to supplant state law.'"  Id. (quoting Travelers, 514 U.S. at 654); see also John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank, 510 U.S. 86, 99 (1993) ("[W]e discern no solid basis for believing that Congress, when it designed ERISA, intended fundamentally to alter traditional preemption analysis.").

Since then, the Court has consistently looked to the purposes and objectives of ERISA, and applied ordinary

preemption principles in its ERISA preemption cases.[8]  See, e.g., Aetna Health Inc. v. Davila, 542 U.S. 200, 209, 217-18 (2004) (preempting respondents' state tort claim seeking to rectify a wrongful denial of benefits because it would "pose an obstacle to the purposes and objectives of Congress" because it "conflict[ed] with the clear congressional intent to make the ERISA remedy exclusive" (quoting Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 52 (1987)) (internal quotation marks omitted)); Boggs, 520 U.S. at 841 ("We can begin, and in this case end, the analysis by simply asking if state law conflicts with the provisions of ERISA or operates to frustrate its objects. . . . We need not inquire whether the statutory phrase 'relate to' provides further and additional support for the pre-emption claim."); see also Dillingham, 519 U.S. at 336 (Scalia, J., concurring) ("I think it accurately describes our current ERISA

---

[8]     Justices Scalia, Ginsburg, and Breyer have urged the court to completely abandon the application of the "relate to" language in ERISA's preemption clause and instead, apply ordinary principles of preemption in ERISA cases.  In a concurring opinion joined by Justice Ginsburg, Justice Scalia opined that the Court's "first take" of the preemption provision was wrong.  Dillingham, 519 U.S. at 336 (Scalia, J., concurring).  He explained that the "relate to" clause of the preemption provision was meant, "not to set forth a test for pre-emption, but rather to identify the field in which ordinary field pre-emption applies-namely, the field of laws regulating" employee benefit plans.  Id.; see also Egelhoff v. Egelhoff, 532 U.S. 141, 153 (2001) (Breyer, J., dissenting) (noting his "fear" that "failure to endorse" Justice Scalia's approach in Dillingham, applying normal conflict and field preemption principles in ERISA cases, would continue to produce an "avalanche of litigation" as courts struggled to interpret ERISA's preemption clause (citation omitted) (internal quotation marks omitted)).

jurisprudence to say that we apply ordinary field pre-emption, and, of course, ordinary conflict pre-emption.").

This court has similarly endeavored to apply traditional preemption principles in our own ERISA cases, recognizing that state law may be expressly or impliedly preempted by federal law.  See Garcia, 90 Hawaiʻi at 430, 978 P.2d at 868 ("[W]e are presented with the question whether Congress, in ERISA, expressly or impliedly intended to preempt the state law claims asserted in Plaintiffs' complaint.").

We have held that state law claims asserted by beneficiaries for improper processing of claims for benefits under an ERISA plan are expressly preempted by ERISA.  Id. at 432, 978 P.2d at 870.  This is so because "Congress clearly expressed an intent" that ERISA's civil enforcement provision "be the exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits, and that varying state causes of action for claims within the scope [of these provisions] would pose an obstacle to the purposes and objectives of Congress."  Pilot, 481 U.S. at 52.  Accordingly, based on "the clear expression of congressional intent that ERISA's civil enforcement scheme be exclusive," ERISA expressly preempts such state causes of action.  Id. at 57; see also AFL Hotel & Rest. Workers Health &

18

Welfare Trust Fund v. Bosque, 110 Hawaiʻi 318, 324, 132 P.3d 1229, 1235 (2006) ("[S]tate law claims are expressly preempted where they rely on a person's 'status as a beneficiary under the [ERISA] plan and ar[i]se from the administration of benefits under the plan.'" (alterations in original) (quoting Garcia, 90 Hawaiʻi at 433, 978 P.2d at 871)).

In addition to express preemption, this court has recognized that a federal statute can impliedly preempt state law under field or conflict preemption. Under implied field preemption, a federal statute preempts state law "when the scope of a statute indicates that Congress intended federal law to occupy a field exclusively . . . ." Freightliner Corp. v. Myrick, 514 U.S. 280, 287 (1995) (citing English v. Gen. Elec. Co., 496 U.S. 72, 78-79 (1990)). Under implied conflict preemption, a federal statute preempts state law "when state law is in actual conflict with federal law." Id. Implied conflict preemption has been found "where it is impossible for a private party to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Id. (citations omitted) (internal quotation marks omitted).

We applied the doctrine of implied conflict preemption in a case involving a Hawaiʻi state statute. In Hawaiʻi

19

Management Alliance Association v. Insurance Commissioner, we concluded that a Hawaiʻi statute that provided an independent review of an insurer's denial of benefits and provided claimants the right to appeal that denial to the courts, allowing for a judicial determination of the claimants entitlement to benefits, was preempted. 106 Hawaiʻi 21, 34-35, 100 P.3d 952, 965-66 (2004). We explained that in cases involving ERISA plans, such adjudication was in actual conflict with ERISA's civil enforcement scheme, which the Supreme Court had concluded was intended to be exclusive. Id. Accordingly, we held that ERISA's civil enforcement scheme impliedly preempted the Hawaiʻi statute under the doctrine of conflict preemption. Id. at 29-30, 100 P.3d at 960-61.

The instant case is distinguishable from our previous cases because it does not involve a claim for benefits under an ERISA plan. Rather, the state law in the instant case is a common law indemnification claim based on Rodrigues' allegations that UPW negligently supervised him in his role as an ERISA fiduciary and thus, UPW, not he, should be held liable for his breach of fiduciary duties under ERISA. Congress's intent to preempt such claims is not explicitly stated in ERISA's language nor is it clear on its face that the claim "relates to" an

20

employee benefit plan within the meaning of ERISA's preemption clause.

Notwithstanding, we hold that Rodrigues' state law claim is in conflict with ERISA. Allowing Rodrigues to proceed with his state law claim would pose an obstacle to the purposes and objectives of Congress in enacting ERISA. See Boggs, 520 U.S. at 844 ("Conventional conflict pre-emption principles require pre-emption . . . where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." (quoting Gade v. Nat'l Solid Wastes Mgmt. Ass'n, 505 U.S. 88, 98 (1992)) (internal quotation mark omitted)). Accordingly, Rodrigues' state law claim cannot survive under the doctrine of implied conflict preemption.

**B.   Rodrigues' State Law Claim is Preempted**

ERISA's central focus is on the administrative integrity of benefit plans. Fort Halifax Packing Co., Inc. v. Coyne, 482 U.S. 1, 18 (1987). "In enacting ERISA, Congress'[s] primary concern was with the mismanagement of funds accumulated to finance employee benefits and the failure to pay employees benefits from accumulated funds." Morash, 490 U.S. at 115. "Thus, Congress enacted ERISA . . . to protect plan participants and beneficiaries from abuses and mismanagement in the administration of employee pension and benefit plans." Hawaiʻi

Laborers' Trust Funds v. Maui Prince Hotel, 81 Hawaiʻi 487, 493, 918 P.2d 1143, 1149 (1996). To this end, Congress "established extensive reporting, disclosure, and fiduciary duty requirements to insure against the possibility that the employee's expectation of the benefit would be defeated through poor management by the plan administrator." Morash, 490 U.S. at 115; see also 29 U.S.C. § 1001 (2012) (declaring the policies of ERISA).

The role of the ERISA fiduciary is critical to the administrative integrity of an employee benefit plan. Congress recognized that "without standards by which a participant can measure the fiduciary's conduct, [a participant] is not equipped to safeguard either his [or her] own rights or the plan assets." Bird v. Shearson Lehman/Am. Express, Inc., 926 F.2d 116, 123 (2d Cir. 1991) (citation omitted). ERISA thus specifies stringent standards of conduct and responsibility on fiduciaries of employee benefit plans to prevent potential fiduciary abuse. Pilot Life, 481 U.S. at 44; Coyne, 482 U.S. at 15.

The duties imposed by ERISA are "the highest known to the law." Johnson v. Couturier, 572 F.3d 1067, 1082 (9th Cir. 2009) (quoting Howard v. Shay, 100 F.3d 1484, 1488 (9th Cir. 1996)) (internal quotation marks omitted). Congress chose to hold plan fiduciaries to this high standard "to promote the

interests of employees and their beneficiaries in employee benefit plans[.]" Id. (quoting Shaw, 463 U.S. at 90) (internal quotation marks omitted). An ERISA fiduciary must "discharge his duties . . . solely in the interest of the participants and beneficiaries" of the plan, and "for the exclusive purpose[s] of . . . providing benefits to plan participants and their beneficiaries[,]" and "defraying reasonable expenses of administering the plan[.]" 29 U.S.C. § 1104(a)(1)(A)(i)-(ii).

In further support of these rigorous fiduciary responsibilities, ERISA holds its fiduciaries personally liable for their breaches. Pursuant to 29 U.S.C. § 1109(a), a fiduciary is personally liable for (1) "damages (to make good to [the] plan any losses to the plan resulting from each such breach)"; (2) "restitution (to restore to [the] plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary)"; and (3) "such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary." Mertens, 508 U.S. at 252 (alterations in original) (quoting 29 U.S.C. § 1109(a) (1988)) (internal quotation marks omitted). ERISA forbids agreements that relieve fiduciaries from such liability. Under 29 U.S.C. § 1110(a), "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability

for any responsibility, obligation, or duty . . . [is] void as against public policy."  29 U.S.C. § 1110(a) (2012).

In this case, Rodrigues portrays himself not as a fiduciary, but as a mere agent performing duties at the direction of his principal, UPW.  Rodrigues argues that UPW assigned him to invest the MAF funds, was aware of the MAF investments in Best Rescue, and acquiesced to them; thus UPW, not he, should be held liable for the $850,000 judgment imposed by the federal district court.  We disagree.

ERISA's regulatory standards and fiduciary provisions were deliberately crafted to safeguard employees and "prevent abuses of the special responsibilities borne by those dealing with employee benefit plans" including "self-dealing, imprudent investing, and misappropriation of plan funds."  Coyne, 482 U.S. at 15 (citation omitted) (internal quotation marks omitted).  Rodrigues was more than simply UPW's agent and employee; he was the MAF's administrator and an ERISA fiduciary.  The federal district court concluded that the evidence was "sufficient to establish by far more than a preponderance of the evidence that [Rodrigues] exercised discretionary authority and control over the management of the [MAF's] assets" in making the loans to Best Rescue.  DeCosta, 2008 WL 1815716, at *9.  Accordingly, Rodrigues' actions with respect to the loans must be evaluated

24

in his capacity as an ERISA fiduciary, not as an agent and employee with no discretion or control over the MAF's assets.

We also emphasize that contributions to the MAF are made by UPW members, UPW employees, and their dependents; contributions are not made by their employers. Thus, Rodrigues seeks indemnity, essentially a dollar for dollar reimbursement from UPW, for the liability he incurred for his mismanagement of the MAF funds, not simply from his employer, UPW, but from the very participants to whom he breached his duties. Under these circumstances, permitting Rodrigues' state indemnity claim would undermine ERISA's goal of protecting plan participants and beneficiaries from abuses and mismanagement in the administration of employee benefit plans. "In the face of this direct clash between state law and the provisions and objectives of ERISA, the state law cannot stand." Boggs, 520 U.S. at 844. We "are not free to change ERISA's structure and balance" to permit Rodrigues to escape any liability for his imprudent investing. Id. ERISA requires fiduciaries to be personally liable for damages to the plan resulting from a fiduciary breach. Accordingly, we hold Rodrigues' claim is preempted.

### V.  Conclusion

For the foregoing reasons, we hold that the circuit court correctly concluded that Rodrigues' indemnity claim was

preempted by ERISA.  Accordingly, we affirm the ICA's April 15, 2014 judgment on appeal, entered pursuant to its March 13, 2014 opinion, on the grounds stated in this opinion.


Eric A. Seitz and
Della A. Belatti,
for petitioner

James E.T. Koshiba and
Charles A. Price
for respondent

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson

